JOHN KAMYSZ, JR., Plaintiff-Appellee, v. THE VILLAGE OF WHEELING, Defendant-Appellant.

First District (5th Division)   Nos. 77-122, 76-942 cons.

Opinion filed September 29, 1978.

Burke & Burke, Ltd., of Chicago (John M. Burke, of counsel), for appellant.

Daniel L. Houlihan and Lee J. Schwartz, both of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Defendant appeals the grant of summary judgment in favor of plaintiff and presents the following issues for review: (1) whether the trial court erred in granting summary judgment for plaintiff with respect to count IV; (2) whether the court erred in granting summary judgment in favor of plaintiff with respect to count II; (3) whether the court erred in striking defendant's affirmative defense of laches; (4) whether the court erred in refusing to recognize defendant's rezoning of the property of plaintiff following the court's initial ruling of summary judgment; and (5) whether the appeal of summary judgment under count IV is improperly before the court and should be dismissed. We affirm. The pertinent facts follow.

The subject property is located at 52 West Dundee Road in the Village of Wheeling. Originally, this property had been zoned in the B-5 zoning district in the Village which permits the development of business and professional offices, but does not allow the use of the property as intended by plaintiff, an automatic car wash. In 1969 the property was rezoned to B-3, which would allow the operation of a coin-operated car wash.

On August 21, 1972, defendant passed Village Ordinance No. 1204, which provided that developmental work must be commenced on any land within two years after any rezoning or the zoning on the property would revert back to its prior classification.

Plaintiff purchased the property in 1973 and requested defendant to rezone the property to a B-4 classification, which would allow the development of non-coin-operated, automatic conveyor-type car washes. Plaintiff's request was denied by defendant and on August 2, 1974, he was notified by mail that since no work had been done on the property, the B-3 zoning presently on the property would revert to B-5, its prior zoning, based on Village Ordinance No. 1204. He requested an extension of the B-3 zoning but was notified that his request was denied, and that the property reverted to the B-5 classification.

On December 31, 1974, notice was published in a local newspaper that the annual adoption of the Official Zoning Map of the Village would take

place on January 28, 1975. A hearing was held and plaintiff's property was shown on the Official Zoning Map as being in the B-5 classification.

On October 14, 1975, this action was brought by plaintiff seeking a declaratory judgment to have the B-5 classification declared invalid. In count I of the complaint he alleges that the zoning classification on the property is unreasonable. In count II, he asserts that as applied to car washes, there is no valid distinction between the B-3 and B-4 zoning classifications of the Village of Wheeling. In count III, he seeks to have the court declare that defendant wrongfully denied him an extension of the B-3 zoning classification on his property. In count IV, he attacks the validity of the Ordinance which rezoned his property because no statutory notice of hearing was given and no hearing was held.

Defendant answered the complaint and filed an affirmative defense stating that plaintiff was guilty of laches because he waited approximately 14 months to file suit challenging the zoning of his property. Defendant alleged that during that time it had changed its position in that it had hired a land planner to study the best use of plaintiff's property and, generally, property throughout the Village. Furthermore, the planner had relied on the validity of the B-5 classification and made his recommendations accordingly.

Plaintiff moved to strike the affirmative defense of laches and for summary judgment as to counts IV and II of the complaint. Defendant filed responses to said motions, and filed the affidavit of its planner, Thompson Dyke, with respect to count II.

On April 30, 1976, plaintiff's motion for summary judgment as to count IV was granted and the trial court held that the property was zoned under the B-3 zoning classification. Defendant then filed a notice of appeal from the order on May 25, 1976. A revised order granting summary judgment on count IV, which incorporated the order of April 30, was entered on July 8, 1976. On July 8, 1976, after a hearing, the trial court denied plaintiff's motion for summary judgment under count II.

On September 16, 1976, defendant filed its first amendment to its answer, which stated that on July 19, 1976, by Ordinance No. 1441, plaintiff's property was zoned B-5 pursuant to notice and hearing as set forth in section 11—13—14 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—14).

This case went to trial on December 8, 1976, and at that time the court entertained a motion to strike the affirmative defense of laches previously submitted by defendant. The motion was granted and the defense was stricken. At the same time the court allowed plaintiff to renew his motion for summary judgment under count II and to introduce into evidence Village Ordinance No. 1451, which was passed on September 20, 1976. This ordinance removed all car washes from the permitted uses under

Village ordinances and placed them in a special use classification in either the B-3 or B-4 zoning district. It also ended any distinction between coin-operated and non-coin-operated automatic car washes. The court struck the affidavit of the land planner and granted the motion for summary judgment under count II. The court further held that Ordinance No. 1441, which rezoned the subject property to the B-5 classification on July 19, 1976, could not be applied to plaintiff's property because of the court's previous ruling that the property was zoned B-3. On January 5, 1977, an order was entered formally granting the motion for summary judgment on count II and allowing the relief prayed for by plaintiff. By the same order on plaintiff's motion, counts I and III of the complaint were dismissed and are not involved in this appeal. A subsequent notice of appeal was filed with respect to that order.

OPINION

Defendant argues four issues in this appeal and plaintiff asserts one. We will consider plaintiff's contention first since it raises a preliminary issue. Plaintiff maintains that the order on April 30, 1976, entering summary judgment on count IV was not a final judgment which disposed of the entire proceeding and therefore Supreme Court Rule 304 (Ill. Rev. Stat. 1975, ch. 110A, par. 304) requires dismissal of the appeal. The rule provides:

> "(a) Judgments As To Fewer Than All Parties or Claims—Necessity for Special Finding. If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. Such a finding may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party. The time for filing the notice of appeal shall run from the entry of the required finding. In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties."

The order of April 30, 1976, did not contain a finding of "no just reason for delaying enforcement or appeal." The amended order of July 8, 1976, however, did contain such language and incorporated the April 30 order so as to correct any defects in its finality. This order is in the record and before this court. The substantive issues were not changed by the amended order and, therefore, this appeal is properly before this court.

Defendant contends that the trial court erroneously granted summary judgment for plaintiff with respect to count IV of the complaint, in which it was alleged that the reverter ordinance could not be applied to plaintiff's property and that the subject property was rezoned without defendant complying with the statutory requirements for rezoning concerning notice or hearing. We disagree.

Section 57 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57) provides that a motion for summary judgment should be granted where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." The purpose of summary judgment is to determine if any triable factual issues exist. (*Stanfield v. Medalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 340 N.E.2d 276.) If no material issue of fact exists, then the moving party is entitled to summary judgment, as a matter of law. *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Allen v. Meyer* (1958), 14 Ill. 2d 284, 152 N.E.2d 576; *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 360 N.E.2d 440.

Applying these principles to the present case, we find that summary judgment as to count IV was an appropriate remedy since there is no genuine issue of material fact.

In 1973, when plaintiff purchased the subject property, it was zoned under the B-3 classification. In 1972, defendant adopted a reverter ordinance No. 1204 that provided:

> "*Time Length.* Where the corporate authorities have enacted an ordinance pursuant to the provisions of this title amending the zoning designation on a parcel or tract of land, the ordinance shall become null and void and the property shall revert to its prior zoning within two years of the date of the enactment of the ordinance, unless work thereon is substantially under way. The corporate authorities may, upon written application of the owner, within the two year period, extend the time within which the ordinance shall remain in effect, under extenuating circumstances, by the enactment of a new ordinance."

At the time plaintiff acquired the property, he requested a B-4 reclassification. He wished to use the property for an automatic non-coin-operated car wash. B-3 allowed only coin-operated car washes and B-4 non-coin-operated car washes. On August 2, 1974, he was informed by letter that he would not be granted his B-4 classification and that on August 21, 1974, the property would revert to B-5, which did not allow any car washes.

■■ Plaintiff argues that the reverter ordinance cannot be applied to his

property since the property was rezoned prior to the adoption of the ordinance. We agree. If all properties which had been rezoned before the ordinance was passed were subject to the ordinance, confusion could result, for rezonings are not uncommon as villages develop. Furthermore, by the terms of the reverter ordinance, the reversion takes place two years after the rezoning. Plaintiff's property was rezoned in 1969 from B-5 to B-3. Thus, the reversion would have had to take place in 1971. The ordinance, however, was not passed until 1972, therefore, any application of it to plaintiff's property would be retroactive. The language of Ordinance No. 1204 does not expressly state that all prior rezonings were to revert to their prior classifications two years from its enactment. In that regard, an intention that an ordinance have retrospective effect must be expressed by clear and unequivocal language. Any doubt is therefore resolved against retroactivity and in favor of prospectivity. (*Village of Park Forest v. La Salle National Bank* (1973), 16 Ill. App. 3d 288, 306 N.E.2d 365; *McQueeney v. Catholic Bishop of Chicago* (1959), 21 Ill. App. 2d 553, 159 N.E.2d 43.) In construing the Chicago Towing Ordinance, the court in *Baron v. Abt* (1965), 61 Ill. App. 2d 414, 425, 209 N.E.2d 843, 849, stated:

"Any intent that an ordinance operate retroactively must be evident, as where the pertinent language specifically requires compliance by pre-existing buildings."

Defendant could have made all prior rezonings specifically subject to the reverter Ordinance No. 1204, but failed to do so.

Additionally, plaintiff asserts that there was no proper notice or hearing in August 1974 when defendant contends the rezoning from B-3 to B-5 took place. We find this argument persuasive. Section 11—13—14 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—14) provides:

"The regulations imposed and the districts created under the authority of this Division 13 may be amended from time to time by ordinance after the ordinance establishing them has gone into effect, but no such amendments shall be made without a hearing before some commission or committee designated by the corporate authorities. Notice shall be given of the time and place of the hearing, not more than 30 nor less than 15 days before the hearing, by publishing a notice thereof at least once in one or more newspapers published in the municipality, or, if no newspaper is published therein, then in one or more newspapers with a general circulation within the municipality."

Plaintiff purchased the subject property in 1973. During the 11 months that followed, he tried to have it reclassified B-4. After he was denied the B-4 reclassification, on August 2, 1974, he received a notice from

defendant that the reverter ordinance of the Village would apply to his property unless he obtained an extension. He applied for an extension but on August 20, 1974, defendant denied him a continued B-3 classification and informed him that on August 21, 1974, his property would be rezoned B-5.

Defendant maintains that the personal notice plaintiff received is more than the law required. This argument ignores the fact that the record does not reveal that plaintiff was aware of the reverter ordinance when he purchased the property. Furthermore, he was given no opportunity to protest it in August of 1974.

Defendant further contends that plaintiff was given adequate notice of the rezoning because at the time the Village adopted its Official Zoning Map a hearing was held, after notice by publication in a local newspaper.

On December 31, 1974, a notice was published in a local newspaper indicating a hearing would be held on January 28, 1975, considering the adoption of a new zoning map. During the hearing in January, Ordinance No. 1351 was adopted establishing the Official Zoning Map, which showed plaintiff's property zoned B-5. However, the adoption of the zoning map is done on an annual basis and encompasses all the changes clarifying the map. The adoption of this general annual zoning ordinance five months after the purported reverter did not reclassify plaintiff's property. Defendant, in the notice of publication, did not give any notice to plaintiff at the time it adopted the annual zoning ordinance that it was changing his zoning from B-3 to B-5, nor did it hold a hearing to consider the advisability of such change.

■■ Thus, we hold that the reverter ordinance does not apply to the property owned by plaintiff since it was applied retroactively in that the 1969 B-3 classification predates the passage of the 1972 reverter ordinance and there was no proper notice or hearing in August 1974 when defendant states the B-3 zoning reverted to B-5 zoning.

Defendant contends that the court erred in granting summary judgment in favor of plaintiff with respect to count II, since a genuine issue of material fact exists as to whether there is a valid distinction between coin-operated car washes which are allowed under B-3 zoning and non-coin-operated car washes permitted under the B-4 classification. We cannot agree. In count II of his complaint, plaintiff alleges that there is no distinction between the types of car washes set out in the B-3 and B-4 zoning classifications. Plaintiff's motion for summary judgment with respect to count II also claimed that there was no lawful legislative difference in the character of the car wash which he sought to build from the type of car wash allowed under B-3. Defendant filed a reply to the motion and also filed the affidavit of Thompson A. Dyke, a land planner.

The affidavit purported to state several differences between the car washes set forth in the B-3 zoning and the B-4 zoning. Plaintiff moved to strike the affidavit pursuant to Supreme Court Rule 191(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 191(b)) because it contained alleged conclusions. On July 8, 1976, the trial court denied the motion for summary judgment after striking paragraph 5 of the affidavit. Plaintiff, on December 8, 1976, renewed his motion and the court struck the entire affidavit of Mr. Dyke and granted summary judgment on count II.

The B-3 General Business District classification of the zoning ordinance of defendant authorizes, among other permitted uses in the classification, the following land use: "Interior coin-operated carwash, not in connection with automobile service station which dispenses oil or gas, provided that there shall be a holding area which shall hold no less than forty average sized passenger motor vehicles."

Excluded as a permitted use in the B-3 classification is the following land use which is restricted to the B-4 Service Business District: "Carwash, other than coin-operated, not in connection with an automobile service station which dispenses oil or gas, provided that there shall be a holding area which shall hold no less than forty average-sized passenger automobiles." Moreover, the B-3 classification authorizes 22 other permitted land uses.

Proceeding to the basic issue of whether the statutory classification created by the B-3 and B-4 is reasonable, a statutory classification can be upheld only where there are real differences between the classes and where the selection of a particular class bears a reasonable relation to the iniquities to be remedied by the statute. (*Frost v. Village of Glen Ellyn* (1964), 30 Ill. 2d 241, 195 N.E.2d 616.) In that case the Illinois Supreme Court invalidated a zoning ordinance that excluded drive-in restaurants but allowed 62 other types of retail businesses; drive-in restaurants were not found to be more detrimental to the public health, safety or morals than other permitted uses.

Declaring that zoning ordinances must employ classifications which bear a substantial relation to the public health, safety or welfare, the Illinois Supreme Court in *City of Chicago v. Sachs* (1953), 1 Ill. 2d 342, 115 N.E.2d 762, struck down a zoning classification that authorized grade schools, high schools, vocational schools, colleges and universities, but excluded prekindergarten or nursery schools. The court found that there was no basis for differentiation between the types of schools and therefore found the ordinance to be capricious and unreasonable.

Similarly, the Illinois Supreme Court in *Ronda Realty Corp. v. Lawton* (1953), 414 Ill. 313, 111 N.E.2d 310, held that a zoning ordinance which required more stringent parking provisions for apartment structures than

for boarding houses and other buildings was arbitrary and discriminatory. The court stated:

"Also, in this regard, we have held that even though a zoning ordinance be based upon proper statutory authority and is reasonably designed to protect the public health or safety, it cannot, in such guise, under the rights guaranteed by the Illinois and Federal constitutions, effect an arbitrary discrimination against the class on which it operates by omitting from its coverage persons and objects similarly situated. Statutory classifications can only be sustained where there are real differences between the classes,· and where the selection of the particular class, as distinguished from others, is reasonably related to the evils to be remedied by the statute or ordinance." 414 Ill. 313, 317, 111 N.E.2d 310, 312.

■■ We can find no reasonable cause to distinguish between car washes solely on the basis of whether one had a coin operated machine for payment. The classification imposed bears no reasonable relationship to the public health, safety, welfare and morals. The affidavit of Thompson Dyke, among other things, attempted to distinguish the two types of car washes on the basis of the methods of washing, the length of time required for each car and the type of structure necessary. The affidavit of defendant's planner contained conclusions, and hypothetical suggestions not related to the coin operation of the system. We conclude that the court properly struck the affidavit of Mr. Dyke. Further, as did the trial court, we take notice of Village Ordinance No. 1451, passed after September 1976, in which defendant abolished all distinctions between car washes, based on coin or noncoin operation and placed all car washes in a special use category. This ordinance was introduced into evidence. In view of it, defendant has therefore appeared to recognize that there is no difference between car washes. Consequently, we hold that since no genuine factual issue existed, the trial court correctly granted summary judgment on count II.

Defendant next contends that the trial court erred in striking the affirmative defense of laches. We reject this contention. Defendant asserts: (1) that plaintiff was aware of the zoning when he purchased the property, and (2) plaintiff delayed in challenging the zoning of his property until after the village had hired a professional land planner to plan the development of the area. Thus, it is defendant's position that its reliance on the B-5 zoning on plaintiff's property constitutes a change of position, and plaintiff is barred from pursuing his claim because of laches and that laches creates a factual issue.

Plaintiff maintains that in this case, an action contesting zoning

invalidity, a delay in filing suit does not give grounds for raising the affirmative defense of laches and dismissing the suit.

■■■ The Illinois Supreme Court has determined that a purchaser of property has the right to rely upon the classification which existed as to the property when the purchase is made and upon the rule that the classification will not be changed so long as the basis of public welfare remains, and his acquiescence in the classification will not estop him from testing the validity of the ordinance irrespective of the length of time thereof. (*Trust Co. v. City of Chicago* (1951), 408 Ill. 91, 96 N.E.2d 499; accord, *Metropolitan Life Insurance Co. v. City of Chicago* (1949), 402 Ill. 581, 84 N.E.2d 825; *Harmon v. City of Peoria* (1940), 373 Ill. 594, 27 N.E.2d 525; *Forbes v. Hubbard* (1932), 348 Ill. 166, 180 N.E. 767.) Defendant cites no Illinois zoning case to the contrary. In the present case, the zoning invalidity is attacked approximately 14 months after defendant first acted adversely to plaintiff. Applying the principles of *Trust Co. v. City of Chicago*, we conclude that the trial court properly struck the affirmative defense of laches.

Defendant's final argument is that the trial court erred in refusing to recognize defendant's rezoning of plaintiff's property following the court's initial ruling of summary judgment on count IV.

On April 30, 1976, the trial court held that plaintiff's property was not rezoned B-5, but was zoned under the B-3 classification. Despite this ruling, defendant on July 19, 1976, adopted Ordinance No. 1441, which placed plaintiff's property in the B-5 classification. Plaintiff's position is that this ordinance has no applicability to his property since judgment was entered in his favor prior to passage of the ordinance. We believe his position has merit.

Our holding here is in accord with an earlier decision by this court in *First National Bank v. Village of Skokie* (1967), 85 Ill. App. 2d 326, 229 N.E.2d 378. There, the subject property was zoned for single and two-family use within the R-2 and R-3 classifications. Plaintiffs' proposed multiple apartment development required an R-4 classification under the village's zoning ordinance. Following a denial of the requested reclassification by the Board of Trustees, suit was filed on October 7, 1963. A Master's report filed on October 15, 1965, recommended granting relief to plaintiffs. The Chancellor approved the Master's report on October 28, 1965. On October 25, 1965, between the dates of the Master's report and the decree, the Board of Trustees of the village adopted an amendatory ordinance which rezoned the property to B-2, a commercial district classification. The court stated:

"The amendatory process was begun only after an adverse finding by the Master and was not completed until after the

Chancellor's decree and injunction. While we do not decide that plaintiffs acquired any vested rights to their proposed use merely by filing suit to have the old ordinance declared invalid, we do find the Village was subject to the injunction below restraining interference with the particular use granted plaintiffs by the decree. To hold otherwise would severely weaken the judicial process when it is properly invoked to provide equitable remedy in zoning cases. By repeated eleventh-hour amendments to the zoning ordinance (or thirteenth-hour, as in this case), a resourceful village board could prolong litigation endlessly and utterly deprive an equity petitioner of any meaningful moment at the Chancellor's ear." 85 Ill. App. 2d 326, 336-37, 229 N.E.2d 378, 384.

Furthermore, in *Fiore v. City of Highland Park* (1968), 93 Ill. App. 2d 24, 235 N.E.2d 23, *cert. denied* (1969), 393 U.S. 1084, 21 L. Ed. 2d 776, 89 S. Ct. 867, the court ruled that where an appellate court in a zoning case decided the case adversely to the defendant city, the city could not properly subsequently adopt an ordinance rezoning plaintiffs' property contrary to the opinion and mandate of the appellate court since such action was not warranted under the doctrine of separation of powers.

Defendant relies upon *O'Hare International Bank v. Zoning Board of Appeals* (1976), 37 Ill. App. 3d 1037, 347 N.E.2d 440, which is factually distinguishable from the case at bar. In *O'Hare International Bank*, the case was before the appellate court a second time. In the first case (*O'Hare International Bank v. Zoning Board of Appeals* (1972), 8 Ill. App. 3d 764, 291 N.E.2d 349), plaintiffs, who were seeking to build single family residences on substandard lots, requested building permits. These permits were denied and they appealed to the Zoning Board of Appeals which also denied their request. Thereafter, they filed a complaint for administrative review in the circuit court where a judgment was entered reversing the decision of the zoning board and directing it to issue the permits. In reversing, our court held that plaintiff's complaint for administrative review was fatally defective because it did not name all the parties of record as defendants.

In the second case, within a year after the 1972 reversal, plaintiffs filed a new complaint naming additional defendants. The trial court denied defendants' motion to dismiss the complaint and entered judgment ordering the permits to issue. The Park Ridge Zoning Ordinance under which plaintiffs sought to obtain their permits, was repealed between the decision of the circuit court in March 1970 and the reversal of that decision in 1972. The court ruled that a municipality has the right to repeal an ordinance after judgment of the trial court and while the case is pending on appeal and the new provision is controlling unless vested rights have already accrued. The court was not faced, however, with the

question of whether the city could frustrate and void its opinion and mandate by rezoning after judgment favorable to plaintiff since it reversed the trial court in the first case. This was the issue raised and decided in *Fiore v. City of Highland Park* (1968), 93 Ill. App. 2d 24, 235 N.E.2d 23, *cert. denied* (1969), 393 U.S. 1084, 21 L. Ed. 2d 776, 89 S. Ct. 867. We do not believe that the *O'Hare* case is controlling of the issue that is presented here.

We point out that the authority for the proposition asserted in the appellate court opinion in *O'Hare* was *People ex rel. Eitel v. Lindheimer* (1939), 371 Ill. 367, 21 N.E.2d 318, and *Show of Shows, Inc. v. Illinois Liquor Control Com.* (1967), 86 Ill. App. 2d 109, 230 N.E.2d 268. Both cases were based on facts distinguishable from the pending case. In *Eitel* the repeal of the statute occurred while the case was pending and before judgment in favor of petitioners who were seeking writs of mandamus for a refund of taxes. In the *Show of Shows* case, the zoning change occurred prior to judgment by the appellate court and after a ruling by the circuit court in favor of the Town of Cicero revoking plaintiffs' liquor license. The other cases cited by defendant in support of this contention are either nonzoning cases or zoning cases prior to judgment. Accordingly, we approve the reasoning in the *Skokie* and *Fiore* cases and believe it applies to the case before us. The *O'Hare* opinion does not discuss or distinguish the *Skokie* or *Fiore* case.

■■ We conclude that the trial court correctly refused to recognize Ordinance No. 1441, which purported to rezone plaintiff's property, subsequent to its initial ruling on summary judgment.

The judgment of the Circuit Court is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.