NATIONAL ADVERTISING COMPANY, Plaintiff-Appellant, v. THE VILLAGE OF DOWNERS GROVE *et al.*, Defendants-Appellees (Opus Corporation, Defendant; La Salle National Bank, Intervenor-Defendant).

Second District   No. 2—89—1292

Opinion filed October 10, 1990.—Rehearing denied November 16, 1990.

500

Nadelhoffer, Nagle, Kuhn, Mitchell, Moss & Saloga, of Naperville, and Sanford M. Stein and Jean Marie R. Pechette, both of Gordon & Glickson, of Chicago (Sarah K. Nadelhoffer, of counsel), for appellant.

Kubiesa & Power, Ltd., of Westmont (Barbara J. Gosselar, of counsel), for appellee Village of Downers Grove.

JUSTICE DUNN delivered the opinion of the court:

National Advertising Co. (National) brought suit against the Village of Downers Grove (Village), challenging the constitutionality of its outdoor sign ordinance. It also sought reversal of the Village's zoning board of appeals decision denying it a variance from the ordinance's size restrictions. The trial court granted summary judgment to Downers Grove, and National now appeals.

National is engaged in the business of outdoor advertising. It makes its signs available for commercial and noncommercial messages. In 1983, National leased property near a highway in Downers Grove's B-3 zoning district and applied for a permit to display a double-faced outdoor advertising sign measuring 14 by 48 feet on a sign structure 67 feet high. Under Downers Grove's sign ordinance, an advertising sign is defined as any sign that directs attention to a business, product, or activity available or conducted at a location other than on the zoning lot upon which the sign is located. This

type of sign is also commonly known as an off-site or off-premise sign. Advertising or off-site signs are allowed in Downers Grove in one district—B-3—and signs in the B-3 district may not exceed 20 feet in height and 200 square feet in area.

Because National's proposed sign exceeded the size and height permitted in the B-3 district, it was denied a sign permit. National applied to the zoning board of appeals for a variance on the size limitation, which was also denied. It then filed this four-count complaint. In count I, National challenged the decision of the zoning board of appeals. In count II, National claimed that the zoning ordinance was impermissibly more restrictive than the provisions of the Highway Advertising Control Act of 1971 (Ill. Rev. Stat. 1987, ch. 121, par. 501 *et seq.*). This argument was raised and rejected by interlocutory appeal in *National Advertising Co. v. Village of Downers Grove* (1988), 166 Ill. App. 3d 58, resulting in the dismissal of count II.

National had also asserted in count II that it sought to display advertising signs on leased space of three properties in the M-1 district. These facts were incorporated by reference into counts III and IV. Signs in the M-1 district and the other business and manufacturing districts are permitted so long as they pertain to the business on the premises. And, there is also one exception. Noncommercial copy of any nature may be displayed in these districts as well as in the B-3 district. The size of the signs in districts other than B-3 is determined by the frontage area of the property, *i.e.*, signs in the M-1 district may not exceed one square foot per foot of lot frontage. The signs permitted in these other districts are also commonly referred to as on-site or on-premise signs.

In count III National first claimed that the zoning ordinance in effect in 1983 violated the first amendment to the United States Constitution as a content-based regulation. In 1983, the sign ordinance did not state that all noncommercial copy was permissible. It allowed only noncommercial copy related to political messages. In 1987, the Village amended the ordinance to allow all noncommercial copy. National asserted in count III that the Village improperly amended the ordinance; it also claimed that the amended ordinance violated the first amendment.

In count IV National asserted a violation of due process under the fourteenth amendment and a taking under the fifth amendment, claiming that Downers Grove had no rational basis for limiting its signs to 20 feet in height and 200 square feet in area.

In January 1985 the parties entered an interim settlement agreement that permitted National to display its sign in the B-3 district

and to display signs in the M-1 district on the properties it had mentioned in count II. The agreement stated that National would be permitted to maintain such signs in the event that the sign ordinance was found invalid; but, if valid, National would be required to remove the signs within 30 days.

The trial court found the sign ordinance valid and granted summary judgment to Downers Grove. National now raises the following issues on appeal: (1) whether the trial court erred in ruling that the 1987 amended ordinance applied to this case; (2) whether the trial court erred in granting Downers Grove summary judgment on National's first amendment claim and whether the amended ordinance violates the first amendment; (3) whether the ordinance violates due process; (4) whether National has suffered a taking under the fifth amendment; and (5) whether the court erred in affirming the decision of the Downers Grove zoning board of appeals. For the reasons stated below, we affirm.

National first contends the court erred in applying Downers Grove's 1987 amended ordinance to this case. In a twist of logic, National argues that the 1983 ordinance must apply rather than the 1987 amended ordinance that corrects the asserted unconstitutional regulation. National contends the ordinance in effect in 1983 was an impermissible, content-based regulation because it allowed only one type of noncommercial message, political. The amendment did away with the content-based exception for political speech by adding an exception for all noncommercial copy.

■ A legislative body has a continuing right to amend an ordinance even while litigation involving the ordinance is pending, and the court must decide the case in accordance with the law in effect at the time of decision. (*Gust v. Village of Skokie* (1984), 125 Ill. App. 3d 102, 105-06; *Sagittarius, Inc. v. Village of Arlington Heights* (1980), 90 Ill. App. 3d 401, 404.) At the time the trial court decided the case by summary judgment in 1989, the 1987 amendment was in effect. Thus, the trial court properly applied the amendment to this action. National's arguments to the contrary are without merit.

■ National erroneously compares this case to *Phillips Petroleum Co. v. City of Park Ridge* (1958), 16 Ill. App. 2d 555, arguing that Downers Grove wrongfully denied its applications for permits, thus preventing it from acquiring a vested right before the ordinance was amended. In *Phillips*, the plaintiff applied for a building permit in conformance with the applicable zoning ordinance. The city, however, passed a resolution to temporarily stop building permits from

being issued and then amended the zoning ordinance to disallow plaintiff's intended use of the property. (*Phillips*, 16 Ill. App. 2d at 557-59.) The court determined that the city lacked the power to pass a resolution that kept building permits from being issued, and, but for the improper ordinance, plaintiff would have acquired a vested right under the zoning ordinance. (*Phillips*, 16 Ill. App. 2d at 564-66.) These facts are dissimilar to this case. Here, National's permit application did not conform to the zoning ordinance; it failed to comply with the zoning ordinance's size requirements. Furthermore, Downers Grove did not act outside its authority by enacting a temporary resolution that stopped National's permit from otherwise being issued. Downers Grove did not act in midstream to stop National from acquiring a vested right.

■ National also contends that it had a vested right under the 1983 ordinance. Where a law has been amended, a prior law will be recognized where to do otherwise would affect a vested right. (*Gust*, 125 Ill. App. 3d at 106; *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373.) National contends it obtained a vested right to erect its signs in 1983 when its permit applications were denied because the ordinance at that time violated the first amendment. This, too, is illogical. In the first place, National has not lost a right it would have had but for the amended ordinance. The amended ordinance did not take away a property right; it added one, allowing noncommercial messages on any signs permitted under the ordinance. Secondly, National's permit was not denied because of this alleged unconstitutional provision. National's permit was denied because it proposed to erect a sign that exceeded the size allowed under the ordinance.

■ National contends the amended ordinance violates the first amendment on its face and, at the very least, issues of material fact require reversal of summary judgment. These arguments are not persuasive. A careful reading of the Supreme Court decision in *Metromedia, Inc. v. City of San Diego* (1981), 453 U.S. 490, 69 L. Ed. 2d 800, 101 S. Ct. 2882, establishes that the ordinance does not violate the first amendment, and the court did not err in granting summary judgment to Downers Grove.

In *Metromedia*, a widely fragmented court struck down a San Diego ordinance that allowed on-site commercial advertising but prohibited, with limited exceptions, all off-site advertising and all noncommercial advertising. *Metromedia*, 453 U.S. at 494, 69 L. Ed. 2d at 806, 101 S. Ct. at 2885-86.

Justice White, joined by Justices Stewart, Marshall and Powell,

ruled that a municipality could bar off-site commercial signs while allowing on-site commercial signs; however, an ordinance that allowed on-site commercial signs, but prohibited on-site noncommercial signs, violated the first amendment because it provided greater protection to commercial speech. (*Metromedia*, 453 U.S. at 513, 69 L. Ed. 2d at 818, 101 S. Ct. at 2895 (opinion of White, J., joined by Stewart, Marshall and Powell, JJ.).) Justices Brennan and Blackmun concurred with the judgment, but on a completely different basis. They found the city failed to offer sufficient proof that the ordinance served substantial governmental interests that could not be served by means less intrusive on activity protected by the first amendment. (453 U.S. at 528, 69 L. Ed. 2d at 827, 101 S. Ct. at 2903 (Brennan, J., concurring, joined by Blackmun, J.).) Justice Stevens, in a partial dissent, joined the plurality opinion in holding that San Diego could bar off-site commercial advertising while allowing on-site commercial advertising but disagreed with the plurality's opinion that the San Diego ordinance violated the first amendment by disallowing noncommercial speech where on-site commercial signs were allowed. (453 U.S. at 541, 69 L. Ed. 2d at 836, 101 S. Ct. at 2909-10 (Stevens, J., dissenting in part).) Chief Justice Burger and Justice (now Chief Justice) Rehnquist dissented in separate opinions, arguing that the ordinance did not violate the first amendment as a content-based regulation. 453 U.S. at 555, 69 L. Ed. 2d at 845, 101 S. Ct. at 2917 (Burger, C.J., dissenting; 453 U. S. at 569, 69 L. Ed. 2d at 854, 101 S. Ct. at 2924 (Rehnquist, J., dissenting).

Despite the fragmented decision, it is clear from the opinion of the plurality, which was joined by Justice Stevens, along with the opinions of Justice (now Chief Justice) Rehnquist and Chief Justice Burger, that a municipality may bar off-site advertising while permitting on-site advertising. Other jurisdictions have reached this same conclusion. (See *Scadron v. City of Des Plaines* (N.D. Ill. 1990), 734 F. Supp. 1437, 1447; *Georgia Outdoor Advertising, Inc. v. City of Waynesville* (4th Cir. 1987), 833 F.2d 43, 45-46; *Major Media of the Southeast, Inc. v. City of Raleigh* (4th Cir. 1986), 792 F.2d 1269, 1273, *cert. denied* (1987), 479 U.S. 1102, 94 L. Ed. 2d 185, 107 S. Ct. 1334; *Wheeler v. Commissioner of Highways* (6th Cir. 1987), 822 F.2d 586, 594, *cert. denied* (1988), 484 U.S. 1007, 98 L. Ed. 2d 653, 108 S. Ct. 702.) Under the plurality opinion, a billboard restriction violates the first amendment where it bars noncommercial advertising on a sign that is permissible if the content is commercial. "Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages ***." (*Metromedia*, 453 U.S. at 513, 69

L. Ed. 2d at 818, 101 S. Ct. at 2895.) Downers Grove's ordinance falls completely in line with the plurality's opinion by permitting noncommercial copy on any signs otherwise permitted.

National argues that the ordinance fails the test set out by the plurality in *Metromedia*, or that it at least raises issues of fact that should not have been decided by summary judgment. We are not persuaded. *Metromedia* was decided by summary judgment, and *Metromedia* demonstrates that this ordinance passes the plurality's test as a matter of law. (See *Georgia Outdoor Advertising, Inc. v. Waynesville*, 833 F.2d at 45-46; *Major Media of the Southeast, Inc. v. City of Raleigh*, 792 F.2d at 1272.) Furthermore, the ordinance in this case not only passes the test set out by the plurality in *Metromedia*, it also passes as a content-neutral time, place and manner restriction. See *Rzadkowolski v. Village of Lake Orion* (6th Cir. 1988), 845 F.2d 653, 654-55; *Wheeler v. Commissioner of Highways*, 822 F.2d at 590-96.

The plurality in *Metromedia* applied two tests to the San Diego ordinance, one for its regulation of commercial speech and one for its regulation of noncommercial speech. It first applied the standard for commercial speech, stating that a restriction of commercial speech is permissible if (1) it seeks to implement a substantial governmental interest; (2) directly advances that interest; and (3) reaches no further than necessary to accomplish the given objective. 453 U.S. at 507, 69 L. Ed. 2d at 815, 101 S. Ct. 2892; *Central Hudson Gas & Electric Corp. v. Public Service Comm'n* (1980), 447 U.S. 557, 563-66, 65 L. Ed. 2d 341, 348-51, 100 S. Ct. 2343, 2350-51.

The *Metromedia* plurality, joined by Justice Stevens, found that traffic safety and esthetics are substantial goals of a municipality. (453 U.S. at 507-08, 69 L. Ed. 2d at 815, 101 S. Ct. at 2892-93; see also *Members of City Council v. Taxpayers for Vincent* (1984), 466 U.S. 789, 807, 80 L. Ed. 2d 772, 788, 104 S. Ct. 2118, 2130.) These same goals are espoused by Downers Grove. Its stated purpose is to protect the public health, safety and welfare by reducing signs that may cause traffic safety problems and encouraging a sense of esthetic appreciation for the visual environment. National argues that Downers Grove's asserted interests in traffic safety and esthetics are a facade for the improper ulterior motive of suppressing speech. This attack is without merit. National offers no evidence that this motive exists, and there is no reason to believe that a village that allows on-site advertising and off-site advertising in one district has set out to suppress speech.

The plurality also found that an ordinance barring billboards was

no broader than necessary. The plurality stated:

> "If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." 453 U.S. at 508, 69 L. Ed. 2d at 815, 101 S. Ct. at 2893.

■ Finally, the plurality believed that a ban of off-site commercial billboards directly advanced the governmental interests of traffic safety and esthetics. (453 U.S. at 509-11, 69 L. Ed. 2d at 815-17, 101 S. Ct. at 2893-94.) The plurality stated that it hesitated to disagree with the accumulated, commonsense judgments of local lawmakers and the many reviewing courts that billboards are real and substantial hazards to safety. (453 U.S. at 509, 69 L. Ed. 2d at 816, 101 S. Ct. at 2893.) Likewise in this case, though National has submitted affidavits from experts attesting that the billboards do not operate as safety hazards, it is not the province of this court to say on this controversial subject whether the Village could not reasonably find otherwise.

As for the esthetic goal, the plurality stated that it is not speculative to recognize that billboards, wherever located and constructed, can be perceived as an esthetic harm. (453 U.S. at 510, 69 L. Ed. 2d at 816, 101 S. Ct. at 2893-94.) The plurality also rejected the argument that the ordinance was ineffective because the city allowed on-site billboards. (453 U.S. at 511, 69 L. Ed. 2d at 817, 101 S. Ct. at 2894.) It stated that whether on-site advertising is permitted, the prohibition of off-site advertising is directly related to the stated objectives of traffic safety and esthetics. The city may believe that off-site advertising, with its periodically changing content, presents a more acute problem than does on-site advertising. 453 U.S. at 511, 69 L. Ed. 2d at 817, 101 S. Ct. at 2894.

Thus, under the plurality opinion joined by Justice Stevens in *Metromedia*, it is clear the ordinance does not violate the first amendment with regard to its regulation of commercial speech. In regard to noncommercial speech, the *Metromedia* plurality held the city to a stricter standard, ruling that it could not ban noncommercial speech where commercial speech was allowed. Downers Grove's ordinance does not violate this rule since it expressly allows noncommercial speech on all signs otherwise permitted.

■ The ordinance also passes constitutional muster as a proper time, place and manner restriction. The *Metromedia* plurality declined to analyze the San Diego ordinance as a content-neutral time, place and manner restriction, finding that the ordinance distin-

guished in several ways between permissible and impermissible signs on the basis of content. (453 U.S. at 516, 69 L. Ed. 2d at 820, 101 S. Ct. at 2896-97.) The San Diego ordinance provided 12 exceptions to its prohibition of noncommercial signs, allowing, for example, signs of religious symbols, signs carrying news items, and temporary political signs. (453 U.S. at 494-96, 69 L. Ed. 2d at 806-07, 101 S. Ct. at 2885-86.) Unlike the San Diego ordinance, the Downers Grove ordinance does not regulate content by providing content-based exceptions to its ban on noncommercial speech. It permits noncommercial messages of all types on any signs otherwise permitted.

National contends, however, that, since the content of the sign determines whether it is permissible, *i.e.*, a sign in an on-site district must advertise the business on the premises or a noncommercial message, the ordinance is not a neutral time, place and manner restriction. This is not persuasive. The distinction between on-site and off-site advertising is not aimed toward the suppression of an idea or viewpoint. (See *Taxpayers for Vincent*, 466 U.S. at 804, 80 L. Ed. 2d at 786-87, 104 S. Ct. at 2128.) As stated by the Sixth Circuit Court of Appeals in *Wheeler v. Commissioner of Highways* (822 F.2d at 591):

> "[T]he on-premises/off-premises distinction does not constitute an impermissible regulation of content just because the determination of whether a sign is permitted at a given location is a function of the sign's message."

See also *Scadron v. City of Des Plaines*, 734 F. Supp. at 1447-48.

■ The test for determining whether a viewpoint-neutral regulation is sufficiently justified as a time, place and manner restriction consists of essentially the same factors addressed under the plurality's test for commercial speech. A time, place and manner restriction must (1) further an important or substantial governmental interest, (2) be unrelated to the suppression of free expression, and (3) be no greater than necessary to the furtherance of that interest. (*United States v. O'Brien* (1968), 391 U.S. 367, 377, 20 L. Ed. 2d 672, 680, 88 S. Ct. 1673, 1679.) The ordinance clearly passes this test as we have already stated. It furthers a substantial governmental interest, is no greater than necessary, and is unrelated to the suppression of speech.

■ The final consideration under a time, place and manner restriction is whether the remaining alternative modes of communication are adequate. (*Taxpayers for Vincent*, 466 U.S. at 812, 80 L. Ed. 2d at 791-92, 104 S. Ct. at 2132-33.) Though Downers Grove has not banned all off-site advertising, National contends the size restric-

tions for off-site advertising in effect prohibit billboard advertising because the industry does not make signs this small. And, National argues that other means of communication are not as cost effective. While these factors may be true, it is not sufficient reason to strike this ordinance. By implication the *Metromedia* plurality opinion, though it did not address the regulation under a time, place, and manner restriction, supports this conclusion. In ruling that off-site advertising may be completely banned, the plurality demonstrates that it is not concerned with denying this mode of communication to advertisers. Also, restricting this mode of communication because of its detrimental effect on traffic safety and esthetics is supported by *Kovacs v. Cooper* (1949), 336 U.S. 77, 88-89, 93 L. Ed. 513, 523, 69 S. Ct. 448, 454, where the Court found that the fact that more people may be more easily reached by sound trucks is not enough to call forth constitutional protection for what those charged with public welfare reasonably think is a nuisance when easy means of publicity are open.

National offers three other unpersuasive reasons for finding that the ordinance violates the first amendment.

■ National contends the ordinance unconstitutionally creates more severe restrictions for off-site noncommercial signs than on-site noncommercial signs. The size restriction for on-site signs in the B-2 and B-3 district is limited to two square feet per foot of lot frontage on adjacent streets, alleys or other public ways. National asserts that some on-site signs are larger than the ones it proposes to display. Thus, it argues that the ordinance violates the first amendment by allowing on-site advertisers to post larger noncommercial signs than off-site advertisers. As already discussed, *Metromedia* held that a municipality could permit on-site advertising, while banning off-site advertising completely. If this is permissible, then it is equally permissible for a municipality to restrict to a greater degree the size of off-site signs it allows. Any disparity between the size of noncommercial off-site and on-site signs is a result of a proper time, place and manner restriction.

■ National next argues that the ordinance impermissibly favors commercial over noncommercial speech. It contends that on-site occupants will have a greater incentive to post commercial rather than noncommercial signs. Whether this may be true, there is no violation of the first amendment. Private decisions of the property owners, not the will of the municipality, will govern this outcome. See *Major Media of the Southeast, Inc.*, 792 F.2d at 1273.

■ National finally argues that, because the ordinance fails to

define commercial and noncommercial copy, officials will be vested with too much discretion in determining whether a sign is permissible in a given district. According to National, the line between commercial and noncommercial is too difficult to draw with accuracy without objective criteria in the ordinance to guide the officials. This argument was rejected by the Fourth Circuit Court of Appeals in *Major Media of the Southeast, Inc.* The court stated:

> "Although the ordinance provides no definition of 'commercial' or 'non-commercial' speech, sufficient guidance is given \*\*\* by the various decisions of the Court relating to billboards and commercial speech. We agree with the district court that 'no codification of these terms is necessary, since the Supreme Court has already defined them.' See *Central Hudson Gas & Elec. v. Public Service Comm'n.*, 447 U.S. 557, 561, 100 S. Ct. 2343, 2348, 65 L. Ed. 2d 341 (1980). In *Central Hudson Gas*, the court stated that commercial speech was 'expression related solely to the economic interests of the speaker and its audience.' Although an occasional marginal case might arise raising the question of whether on the particular facts the definition of commercial speech would be correct, such an infrequent possibility should not in itself justify a generalized charge that the ordinance itself is vague \*\*\*." (*Major Media of the Southeast, Inc.*, 792 F.2d at 1272-73.)

We are persuaded by this analysis. The basic definition provided in *Central Hudson Gas* provides sufficient guidance to officials.

▬▬ National next contends the ordinance is an unreasonable exercise of Downers Grove's police power. There is little need for extensive analysis on this point. As stated in a footnote to the plurality's opinion in *Metromedia*, the due process clause does not afford a greater degree of protection to appellant's business than does the first amendment.

> "Since we hold that the First Amendment interests in commercial speech are not sufficient to prevent the city from prohibiting offsite commercial advertisements, no different result should be reached under the Due Process Clause." 453 U.S. at 521 n.25, 69 L. Ed. 2d at 823 n.25, 101 S. Ct. at 2899 n.25.

See also *Village of Skokie v. Walton on Dempster, Inc.* (1983), 119 Ill. App. 3d 299, 302-04 (reviewing the difference between sign ordinance and other zoning and holding that sign ordinance was reasonable where it was based upon esthetic interest of community and applied uniformly to all citizens).

Next, National contends the ordinance results in a taking of its

property in violation of the fifth amendment. This argument also fails.

A land-use regulation does not constitute a taking if it substantially advances legitimate State interests and does not deny an owner economically viable use of his land. (*Nollan v. California Coastal Comm'n* (1987), 483 U.S. 825, 834, 97 L. Ed. 2d 677, 687, 107 S. Ct. 3141, 3146.) A broad range of governmental purposes and regulations satisfies these requirements. See *Agins v. City of Tiburon* (1980), 447 U.S. 255, 65 L. Ed. 2d 106, 100 S. Ct. 2138 (scenic zoning); *Penn Central Transportation Co. v. New York City* (1978), 438 U.S. 104, 57 L. Ed. 2d 631, 98 S. Ct. 2646 (landmark preservation); *Village of Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 71 L. Ed. 303, 47 S. Ct. 114 (residential zoning).

In the taking analysis, the type of taking often plays a critical role. A taking is more readily found when the interference with property can be characterized as a physical invasion by government rather than an interference that arises from some public program adjusting the benefits and burdens of economic life to promote the common good. (*Penn Central Transportation*, 438 U.S. at 124, 57 L. Ed. 2d at 648, 98 S. Ct. at 2659.) Another relevant factor is the extent to which the regulation has interfered with distinct investment-backed expectations. *Penn Central Transportation*, 438 U.S. at 124, 57 L. Ed. 2d at 648, 98 S. Ct. at 2659.

Considering the above factors, it is clear National has not suffered a taking as a result of the Downers Grove ordinance. Downers Grove has not physically invaded National's property rights. Rather, it has enacted a program that applies to everyone to promote the common good of traffic safety and esthetics, a program that, as already stated, substantially advances legitimate interests of the Village. Furthermore, there is no evidence that the owner of the property has been denied an economically viable use of his land. National is not the owner of the property; it is the lessee. Downers Grove has not interfered with National's legitimate investment-backed expectations. At all times, National had notice that its proposed signs violated the Village's ordinance. "Purchasers who acquire property with the expectation of using it for a purpose not permissible under current zoning restrictions should not expect loss resulting from denial of the proposed use to be a persuasive argument in securing the change." *Lapkus Builders, Inc. v. City of Chicago* (1964), 30 Ill. 2d 304, 310.

In its final argument, National contends the Downers Grove zoning board of appeals decision denying its petition for a variance is

against the manifest weight of the evidence. The zoning ordinance provides that variances are to be granted where the literal enforcement of the ordinance would do manifest injustice or be contrary to the spirit and purpose of the ordinance. The facts do not demonstrate that the board of appeals acted against the manifest weight of the evidence. The evidence shows that National proposed to erect signs with a square footage three times the size allowed under the ordinance. Thus, enforcing the ordinance in this case was not contrary to the purpose of the regulation; it was in furtherance of it. Furthermore, as already stated, National was fully aware at the time that it leased the property that its signs violated the ordinance. There has been no manifest injustice.

Lastly, we address the motion filed by Downers Grove that was ordered taken with the case. Downers Grove filed a motion to strike a portion of National's reply brief in which National asserted at page 19 that a case cited by Downers Grove, *John Donnelly & Sons v. Mallar* (D. Me. 1978), 453 F. Supp. 1272, at 35, 50, and 51, was overturned on the very proposition upon which Downers Grove relied by *John Donnelly & Sons v. Campbell* (1st Cir. 1980), 639 F.2d 6. These cases predate *Metromedia*. Therefore, they are of little value to the resolution of this case. Nonetheless, Downers Grove accurately points out that National's reference to the first circuit case is inaccurate and misleading. It is clear that the proposition for which Downers Grove cited the lower court case was not overturned by the first circuit. Moreover, National's quotation from the concurring opinion in *Campbell* is misleading. National fails to inform this court that the quotation is not from the majority opinion and that this quote does not form the basis for the majority's opinion. Accordingly, the aforementioned portion of National's reply brief is stricken.

The judgment of the circuit court is affirmed.

Affirmed.

GEIGER and WOODWARD, JJ., concur.