**HARP ADVERTISING ILLINOIS, INC., Plaintiff,**

v.

**VILLAGE OF CHICAGO RIDGE, Defendant.**

No. 90 C 867.

United States District Court, N.D. Illinois, E.D.

Dec. 8, 1992.

Kenneth Theodore Kubiesa, Steven Jay Kleinman, Kubiesa & Power, Ltd., Westmont, IL, for plaintiff.

Richard C. Clark, Sonia Victoria Odarczenko, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, Robert Bernard Baal, Bryan J. O'Connor, III, Baal & O'Connor, Chicago, IL, for defendant.

## ORDER

NORGLE, District Judge.

Before the court are the objections of plaintiff, Harp Advertising Illinois, Inc. ("Harp"), to Chief Executive Magistrate Judge Joan H. Lefkow's Report and Recommendation (the "Report"), submitted to this court on October 23, 1992. For the reasons that follow, the Report is adopted in its entirety, and defendant's motion for summary judgement is granted and Harp's motion for summary judgment is denied.

## BACKGROUND

This case arose out of the refusal of the defendant, the Village of Chicago Ridge (the "Village"), to issue a permit to Harp for the construction of a billboard. The Village denied the permit because Harp's proposed sign did not conform to the Village's ordinances, including § 4–5–10.3(A) of the Village's sign code, which limits the area of certain sign faces to 200 square feet. Harp's amended complaint challenges §§ 4–5–5, 4–5–9, and 4–5–10–3 of the Village's sign code and §§ 5–2–1 and 5–7–3 of the Village's zoning ordinance as unconstitutional on their face and as applied. Both parties filed motions for summary judgment, which the court referred to

the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).

On March 13, 1992, the Magistrate Judge entered a report (the "March 13 Report") finding that §§ 4–5–9 and 4–5–10–3(A) of the Village's sign code violated the First Amendment and recommending that Harp's motion for summary judgment be partially granted with respect to those sections. The Magistrate Judge further recommended that the Village's motion for summary judgment be granted with respect to her finding that §§ 4–5–5, 5–2–1 and 5–7–3 do not violate the First Amendment. Additionally, the Magistrate Judge recommended that any decision regarding the severability of any unconstitutional provisions be deferred until a resolution had been reached on all counts of the amended complaint.

After the Magistrate Judge submitted her recommendations, the Village amended its sign code, and Harp voluntarily dismissed all counts except count I of its complaint. In light of the Village's actions, the court resubmitted this matter to the Magistrate Judge for a determination as to whether the amendments to the Village's sign code were validly enacted and, if so, whether the amendments affected the March 13 Report.

In its revision of the sign code, the Village repealed § 4–5–9 and amended § 4–5–10–3(A) by deleting language that gave the Village Board discretionary authority to grant special permission to erect ground signs in excess of certain height restrictions. The Magistrate Judge found that the amended ordinance corrected the provisions that she previously found violative of the First Amendment. Therefore, the Report's recommendation is that the Village's motion for summary judgment be granted in its entirety and Harp's motion for summary judgment be denied. Harp has filed its objections to the Report, asserting three reasons why the court should reject the Report's recommendation and, instead, grant summary judgment in Harp's favor.

Harp's first objection is that the Village's sign regulations prohibit certain noncommercial messages where other commercial or noncommercial messages are permitted. The support Harp provides for this objection is turbid and irresoluble. For example, Harp claims that "the Magistrate [Judge] determined that off-premises political signs would be limited to the M–1 zone subject to a special use," and in support of this assertion Harp cites the Report at "3, n. 1." Footnote 1 on page 3 of the Report [1] does not support this position, nor does it contain the terms "the M–1 zone" or "subject to a special use." Harp also alleges that "under [§ 4–5–15 of] Chicago Ridge's regulations, residential and commercial property owners could not have displayed campaign signs for their candidate of choice during the recent election, as these would clearly be unlawful off-premises noncommercial political signs." Section 4–5–15 [2] does not expressly prevent property

1. Footnote 1 addresses Harp's argument that § 4–5–15 unconstitutionally favors some noncommercial speech over other noncommercial speech. After summarizing the content of § 4–5–15 the Magistrate Judge rejected this argument, noting that while § 4–5–15 sets forth some specific requirements for political signs, such as size and construction material restrictions, the ordinance would still operate to restrict off-premises political signs to the same areas of the Village as other off-premises signs.

2. The full text of § 4–5–15 is as follows:
4–5–15–1: DEFINITION: When used herein, the term "political signs" shall mean those signs supporting a candidate or proposition upon which a ballot is to be cast or vote taken.
4–5–15–2: GENERAL PROVISIONS: Political signs of a temporary nature must be maintained in a structurally safe and presentable manner.

All such signs must be removed within fifteen (15) days after the specified date of the election takes place.
4–5–15–3: LOCATION: No political sign may be placed in the public right of way or attached to any structure in the public right of way prior to two (2) weeks before said election.
4–5–15–4: CONSTRUCTION:
(A) Area Limitations: No temporary political sign may exceed sixty-four (64) square feet and any such temporary political sign exceeding thirty two (32) square feet is to be made of rigid materials.
(B) Weight: Every temporary political sign weighing in excess of fifty (50) pounds must be approved by the Building Commissioner as conforming to the zoning and safety requirements of this Village Code.

owners from displaying political signs, and Harp has not provided the court with any basis for such an interpretation.

 In a nutshell, Harp's argument that the Village's sign ordinance unconstitutionally prohibits certain noncommercial messages where other commercial or noncommercial messages are permitted is not supported by the sign ordinance, the Report, or the March 13 Report. Furthermore, Harp draws untenable conclusions from each of these sources and asks the court to make leaps of logic which it refuses to do. The court finds that the Village's regulation, as amended, is a content-neutral ordinance that furthers an important governmental interest unrelated to the suppression of free speech. *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Therefore, the court rejects Harp's allegation that the Village's sign regulations unconstitutionally prefer commercial speech over noncommercial speech and certain noncommercial messages over others.

 As a second objection to the Report, Harp contends that "the Magistrate erred in treating the sign regulations previously found unconstitutional as severable from the remainder of [the Village's] sign regulations." In response to this objection, the Report states: "[w]ith obvious irony, Harp now insists that the court must consider the Village's sign code in its original form rather than consider amendments which correct provisions which Harp previously asserted to be unconstitutional."

Although a legislative body may not interfere with a party's vested rights, *Coombes v. Getz*, 285 U.S. 434, 438, 52 S.Ct. 435, 435, 76 L.Ed. 866 (1932) (legislature prohibited from enacting provision that would nullify vested rights under existing legislation), the Supreme Court has not hesitated to uphold legislation that has

mooted pending lawsuits and destroyed accrued causes of action. *Taxpayers for Animas–La Plata Referendum v. Animas–La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1477 (10th Cir.1984). The court having made no ruling giving Harp a substantive right under the Village's prior ordinance, the amendments are given effect and Harp's argument fails.

Harp's final objection begins with the claim that the Village's amendments to its sign code are inconsistent with the overall purpose of the code and therefore were "made solely in an attempt to correct admitted constitutional defects." Although this is the claim, Harp fails to provide any support in its favor. Instead, Harp focuses on several provisions of the sign code that permit the Village Board to make discretionary exceptions to restrictions on certain signs. Harp, however, has never before challenged the constitutionality of these other provisions, and whether these unchallenged sections of the ordinance are unconstitutional is not before the court.

Harp is a corporation engaged in the advertising business; it leases real property, constructs a sign, and leases or donates the sign's face. It is in Harp's pecuniary interest to challenge local ordinances that prevent it from maximizing financial gain. Furthermore, because so many communities have similar regulations, it behooves Harp to make as broad a challenge to such local ordinances as possible. Harp has standing to assert that portions of the Village's regulations violated both Harp's rights and the rights of third parties not before the court. Accordingly, Harp identified those restrictions of the Village's codes which it deemed violative of the First Amendment. The provisions identified by Harp that violated the Constitution no longer exist, and therefore, do not violate the

---

4–5–15–5: FEE: There shall be no fee charged for temporary political signs erected on private property.

4–5–15–6: DEPOSIT REQUIRED: There shall be a deposit made for the posting of temporary political signs in and about the Village whereby the sum of three hundred dollars ($300.00) in the case of a political party and one hundred

dollars ($100.00) in the case of an independent candidate shall be deposited with the Village Clerk to insure removal of the temporary signs in conformity with Section 4–5–15–2 hereof. In the event said signs are not removed as per said Section, then in that event said deposit shall be forfeited as damages to the Village.

**1318**

free speech rights of Harp or its advertisers.

In sum, the court has completely reviewed the Report and Harp's objections on a *de novo* standard. 28 U.S.C. § 636(b)(1)(C). The Court finds the Report to be thorough, accurate, and the decision proper. The court further finds Harp's objections to be without merit.

## CONCLUSION

For the reasons stated above, the Court adopts and incorporates Chief Executive Magistrate Judge Lefkow's Report and Recommendation and the holdings contained therein pursuant to 28 U.S.C. § 636(b)(1). Accordingly, the Village's motion for summary judgment is granted in its entirety, and Harp's motion for summary judgment is denied.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

LEFKOW, United States Magistrate Judge:

Plaintiff, Harp Advertising of Illinois, Inc. ("Harp"), has asked this court to find that certain provisions in a billboard regulation scheme for the Village of Chicago Ridge, Illinois ("Village") are unconstitutional. On March 13, 1992, I submitted to Your Honor a Report and Recommendation (the "March 13 Report") regarding the parties' cross motions for summary judgment as to Count I of Harp's five count amended complaint.

In the March 13 Report, I determined that §§ 4–5–9 and 4–5–10–3(A) of the Village's sign code violated the First Amendment and recommended that Harp's motion be granted with respect to those sections,

but denied in all other respects. I also concluded that § 4–5–5 of the sign code and §§ 5–2–1 and 5–7–3 of the Village's zoning ordinance do not violate the First Amendment and, therefore, recommended that the Village's motion be granted as to those three sections, but denied in all other respects. Finally, I recommended that any decision regarding the severability of any unconstitutional provisions be deferred until a resolution had been reached on all counts of the amended complaint.

After I submitted my March 13 Report to Your Honor, the Village amended its sign code and Harp voluntarily dismissed all counts except count I of its amended complaint. In light of these subsequent events, Your Honor has asked that I make a further recommendation as to whether the amendments to the Village's sign code were validly enacted and, if so, whether the amendments have any effect on my March 13 Report or the availability of the relief Harp has requested.

## FACTS

For a detailed recitation of the undisputed facts surrounding this case, I refer Your Honor to my March 13 Report. The following additional facts are relevant to the issues currently under consideration.

Harp's amended complaint challenges §§ 4–5–5 and 4–5–9 of the Village's sign code and §§ 5–2–1 and 5–7–3 of the Village's zoning ordinance as unconstitutional on their face and as applied. In its motion for summary judgment, Harp also questioned the validity of §§ 4–5–10–3 of the sign code and, apparently, § 4–5–15 as well.[1] It is the constitutionality of these provisions that are under consideration.

---

1. Harp asserts that my March 13 Report failed to address its argument that § 4–5–15 unconstitutionally favors some noncommercial speech over other noncommercial speech. Harp's amended complaint does not allege that § 4–5–15 is unconstitutional, nor is this claim clear from Harp's motion papers. In any event, Harp's argument regarding § 4–5–15 lacks merit. Section 4–5–15 sets forth some specific requirements for political signs, such as restrictions on size and construction materials. Sign Code § 4–5–15–4. A deposit, which is refundable if posted signs are removed within fifteen

days after the election to which they pertain, is required prior to posting temporary political signs. *Id.* at § 4–5–15–6. What § 4–5–15 does not do, however, is exempt political signs from compliance with the Village's other ordinances. In other words, nothing in § 4–5–15 prefers political signs over other signs, commercial or noncommercial. Indeed, as Harp acknowledged, under § 4–5–15, the Village's zoning ordinances would still operate to restrict off-premises political signs to the same areas of the Village as other off-premises signs. *See* Plaintiff's

On March 24, 1992, the Village enacted Ordinance 92–3–6 which amended the two sections of the sign code that I had indicated were unconstitutional. The Village repealed § 4–5–9, which had exempted eight categories of signs from virtually all provisions of the sign code. Section 4–5–9 signs [2] were only subject to one sign code provision which allowed the Village Building Commissioner to order the removal of unsafe signs, whereas all other signs had to comply with all of the sign code's provisions. In my March 13 Report, I found that the § 4–5–9 exemptions made content based distinctions between signs and, therefore, violated the First Amendment. With the repeal of § 4–5–9, virtually all signs must comply with all provisions of the sign code, as well as the Village's other ordinances.[3]

The Village also amended § 4–5–10–3(A), which imposes height and area restrictions on ground signs, by deleting language that authorized the Village Board to grant special permission to erect ground signs in excess of the height restrictions. My March 13 Report concluded that § 4–5–10–3(A), in its prior form, violated the First Amendment because the "special permission" language gave Village officials unrestrained discretion to allow some speakers access to a forum that would otherwise be unavailable. This section now prohibits all ground signs in excess of certain height and area restrictions. Other sections of the sign code, pertaining to wall signs, roof signs, projecting signs and mobile signs, continue to include the discretionary "special permission" language which has now been deleted from § 4–5–10–3(A). *See* Sign Code §§ 4–5–11–3(A), 4–5–12–3(A), 4–5–13–2(E) and 4–5–16–2.

By minute order dated July 16, 1992 and amended on July 22, 1992, Your Honor granted Harp's motion to voluntarily dismiss Counts II through V of the amended complaint. As a result, Count I, alleging that the Village's regulation scheme violates the free speech rights of Harp and its advertisers, is the sole remaining count.

## DISCUSSION

With obvious irony, Harp now insists that the court must consider the Village's sign code in its original form rather than consider amendments which correct provisions which Harp previously asserted to be unconstitutional. Harp also urges that the Village's entire billboard regulation scheme must fall because §§ 4–5–9 and 4–5–10–3(A), which I found to be unconstitutional in their prior form, are not severable from the remainder of the regulation scheme. The Village responds that Harp's challenge to the billboard regulation scheme is moot because the court must consider the Village's sign code in its amended form and the amended ordinance contains none of the provisions which I found to be constitutionally infirm. Alternatively, the Village contends that even if the amendments are not considered, the two unconstitutional

---

Memorandum in Support of a Recommendation that It is Entitled to the Relief Sought in Count I of its Complaint at 7. *As discussed in my March 13 Report, such content neutral restrictions are constitutionally permissible.*

2. Section 4–5–9 signs include certain signs advertising the sale or rental of real estate; certain professional nameplates; all signs painted on the exterior surface of a building; certain bulletin boards for public, charitable or religious institutions; certain signs denoting the architect, engineer or contractor placed on work under construction; certain occupational signs denoting the name and profession of the building occupant; all memorial signs when cut into the masonry surface or constructed of incombustible materials; and, all traffic or other Village signs, legal notices, railroad crossing signs, danger and such temporary, emergency or nonadvertising signs as may be approved by the Village Board. Sign Code § 4–5–9.

3. The sign code continues to contain one "exemption." Most temporary signs are only permitted as on premises signs. However, temporary signs carrying civic, political or religious messages need not pertain solely to the business or other activity conducted on the premises where the sign is located. Sign Code § 4–5–14–6. This section does not, however, exempt temporary signs from any other Village ordinance. Thus, temporary off-premises signs carrying civic, political or religious messages may only be posted where other off-premises signs are authorized. Harp has not challenged the validity of § 4–5–14–6 and, therefore, I have not considered its effect on the constitutionality of the sign code.

sections are severable from the remainder of the sign code and all other ordinances that regulate billboards within the Village.

In arguing that the court should not consider the Village's amendments to its sign code, Harp essentially advances two theories. First, Harp maintains that Ordinance 92–3–6 is inconsistent with the remainder of the Village's billboard regulation scheme and that this inconsistency evidences the fact that the new ordinance was not validly enacted. Second, Harp asserts that "eleventh hour" amendments, enacted after judgment or an adverse finding, are ineffective to alter rights established by the earlier adverse finding or judgment.

Harp offers no proof that the Village did not follow the appropriate procedures in enacting Ordinance 92–3–6. As the Village points out, there is nothing in the record indicating that Harp was entitled to prior notice of the amendment or even that public hearings were required before amending the sign code. A quorum of Village Trustees passed Ordinance 92–3–6 at a regularly scheduled meeting of the Village Board. At least in the technical sense then, the ordinance appears to have been validly enacted.

Harp also argues, however, that the "inconsistency" and "absurdity" of the amendment in light of the rest of the Village's sign regulations, demonstrates that the Village failed to consider the impact of the amendment and enacted the ordinance solely to circumvent the findings made in my March 13 Report. In essence, Harp seems to be arguing that the Village acted with an improper purpose and, therefore, the ordinance is invalid. Yet, Harp cites no authority for this proposition. Although the Village did not enact Ordinance 92–3–6 until shortly after I issued my March 13 Report, the Seventh Circuit, at least implicitly, has recognized that attempts to correct constitutional infirmities in legislation should be taken into account, even when the correction is made in direct response to a prior judicial indication of unconstitutionality. *See Chicago Observer, Inc. v. Chicago*, 929 F.2d 325, 327–28 (7th Cir.1991). In *Chicago Observer*, a district court judge

issued a preliminary injunction against the enforcement of an ordinance regulating newsracks because the ordinance authorized removal of noncomplying newsracks without giving the owners an opportunity to be heard. Regulations were quickly adopted to offer newsrack owners a hearing prior to any order to remove a newsrack. In reversing the district court's refusal to dissolve the injunction, the Seventh Circuit stated, "Chicago now offers hearings before removing newsracks. How that was accomplished is of no constitutional moment." *Id.* at 328.

Moreover, Harp's assertion that the ordinance is inconsistent with the sign code's purpose is not at all clear. The repeal of § 4–5–9 means that all signs within the Village must comply with all provisions of the sign code. Requiring more, rather than fewer, signs to conform to the sign code would seemingly further the purpose of the sign code, not hinder it. Harp's effort to illustrate the amendment's "unreasonable" impact is unconvincing. Harp argues that the repeal of § 4–5–9 will lead to an unwanted proliferation of large signs, such as professional nameplates or religious bulletin boards with 500 square foot surface areas. According to Harp, § 4–5–9 previously limited the size of these § 4–5–9 signs. Section 4–5–9, however, never limited the size of any sign. Rather, it exempted relatively small versions of signs, which by virtue of their content fell within the eight categories set forth in that section, from the remainder of the sign code's restrictions. Larger signs with similar content simply had to comply with the sign code's other provisions. Thus, the amendment does not suddenly authorize the existence of larger signs. The fact that it subjects more signs, regardless of content or size, to the restrictions of the sign code is not inconsistent with the interests of traffic safety and aesthetics that are at the heart of the Village's billboard regulation scheme. Similarly, the deletion of the "special permission" language from § 4–5–10–3(A) means more signs, indeed *all* ground signs, must comply with certain height restrictions. Requiring all ground signs to conform to height restrictions is

actually more consistent with aesthetic interests than allowing some ground signs to exceed the height restrictions, as the Village previously could do.

Harp's examples allegedly evidencing the "speciousness" of the amended § 4–5–10–3(A) are unavailing. Without citation to authority, Harp asserts that the amendment cannot defeat the facial challenge to the sign regulations because my March 13 Report found that the Village may have already used the special permission clause to discriminate among speakers. Contrary to Harp's contention, my March 13 Report did not find that the Village had already used the "special permission" clause in an unconstitutional manner. Rather, I found that in the absence of any evidence as to how the clause was implemented, the presumption against its validity should control. Harp makes no attempt to explain why eliminating an unconstitutional provision would not defeat a facial challenge to that provision. A provision that no longer exists seemingly cannot be unconstitutional on its face or as applied.

Harp also points out that the Village's sign code, as amended, continues to permit the Village Board to make discretionary exceptions to restrictions on signs other than ground signs. While Harp is correct, Harp has never challenged the constitutionality of these other provisions. Harp only argues that deleting the "special permission" clause from § 4–5–10–3(A) is inconsistent with the continued existence of a similar clause in other provisions pertaining to wall, roof, projecting and mobile signs. Regardless of whether these unchallenged sections of the sign code are unconstitutional, an issue which is not before the court and which I do not decide, the Village took action to eliminate the constitutional problems that did exist in its sign regulations. To say that other problems may remain does not establish that the amendments it made are invalid.[4] Harp's second theory, that even if validly enacted, Ordinance 92–3–6 should not be given effect, is counter to the general rule that a court should dispose of a case upon the law as it exists at the time of its decision, not as it existed at some point in the past. *Taxpayers for Animas–La Plata Referendum v. Animas–La Plata Water Conservancy District*, 739 F.2d 1472, 1478 (10th Cir.1984); *First National Bank of Skokie v. Skokie*, 85 Ill.App.2d 326, 332, 229 N.E.2d 378, 382 (1967). A distinction has been made, however, when a court decree has established substantive or vested rights under existing legislation and a governmental entity attempts to avoid the consequences of the earlier decree by amending the legislation. *See Id.* See also *National Advertising Co. v. Downers Grove*, 204 Ill.App.3d 499, 505, 149 Ill.Dec. 604, 608, 561 N.E.2d 1300, 1304 (1990); *Kamysz v. Wheeling*, 65 Ill.App.3d 629, 22 Ill.Dec. 29, 382 N.E.2d 349 (1978). The courts will not give effect to a legislative amendment under circumstances where the amendment would directly nullify substantive rights that a plaintiff possesses by virtue of an earlier decree or judgment.

Contrary to Harp's arguments, the exception to the general rule does not apply in the case at bar. The cross motions for summary judgment are still pending before the court; no ruling has yet been made that might give Harp a substantive right to erect its sign. While I believe, as Harp suggests, that my March 13 Report is entitled to "considerable weight," the fact remains that magistrate judges (absent consent of all parties) are not empowered to rule on dispositive motions like those presently before the court. 28 U.S.C.

---

**4.** The same can be said with respect to Harp's assertion that § 5–9–3 of the Village's zoning ordinance is evidence that the sole purpose of Ordinance 92–3–6 was to avoid the effect of my March 13 Report. Section 5–9–3 authorizes off-premises advertising in M–1 zoning districts, but only if a special use permit is obtained. Zoning Ord. § 5–9–3(O). Although it less than clear, Harp apparently is arguing that the Village Board has unrestrained discretion to grant or deny special use permits and, therefore, can use the permitting process to discriminate between off-premises signs based on the message to be displayed. Again, Harp has not directly challenged the constitutionality of § 5–9–3. Even if it had, it has not offered any evidence that the permitting process lacks the procedural safeguards necessary to control the exercise of official discretion.

§ 636(b)(1)(A). Instead, the March 13 Report contained *proposed* findings and a *recommended* disposition for Your Honor's consideration. Because the Ordinance 92–3–6 was enacted prior to any disposition in this case, the amendments to the sign code should be given effect. *See National Advertising,* 204 Ill.App.3d at 504, 149 Ill.Dec. at 608, 561 N.E.2d at 1304 (trial court properly applied an amendment that was in effect at the time the case was decided by summary judgment).[5]

Harp's reliance on *First National Bank of Skokie* and other cases involving prior adverse rulings is not compelling. Unlike the instant action, in each of the cases cited by Harp, legislative amendments were ineffective to modify rights established in prior rulings, judgments or decrees. In *First National,* a municipality changed the zoning of a parcel to a classification that would preclude the plaintiff's proposed use even though a court had previously entered a decree holding that the parcel's original zoning classification unconstitutional and directing the municipality to allow the plaintiff's proposed use. *First National,* 85 Ill.App.2d at 329–31, 229 N.E.2d at 380–81. In reaching its decision, the court found it necessary to distinguish an earlier decision where an amendatory ordinance was enacted after a suit was filed to invalidate the original ordinance but before the suit was decided. *Id.* at 335–37, 229 N.E.2d at 383–84. The court stated,

> We agree that the decision in Ward may be read to have held that the legislative powers include those of amendment while the issue is still under litigation at the trial stage. Nevertheless, we distinguish the application of that case where, as here, the fact-finding stage of the litigation has been completed, a decision reached, and a decree entered.

*Id.* at 337, 229 N.E.2d at 348, *distinguishing, Ward v. Village of Elmwood Park,* 8 Ill.App.2d 37, 130 N.E.2d 287 (1955). Because the instant action is in a posture similar to *Ward* and *National Advertising* rather than *First National,* the court should give effect to the Village's sign regulations as amended by Ordinance 92–3–6 in deciding the motions for summary judgment.

In light of the above discussion, it is not necessary to consider whether any unconstitutional provisions in the sign code are severable from the remainder of the Village's billboard regulation scheme. The provisions which I previously found to violate the First Amendment no longer exist.

### RECOMMENDATION

For the foregoing reasons and for those set forth in my March 13, 1992 Report and Recommendation, it is now recommended that defendant's motion for summary judgment be granted in its entirety and that plaintiff's motion for summary judgment be denied.

Written objection to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable Charles R. Norgle, Sr. within ten days after service of this Report and Recommendation. *See* Fed.R.Civ.P. 72(b). Failure to object will waive any such issue on appeal.

Dated: October 23, 1992.

---

5. Harp's attempt to distinguish *National Advertising* is ineffective. First, Harp maintains that unlike the Village's amendment, the amendment at issue in *National Advertising* was consistent with its other sign regulations because it merely placed noncommercial messages on equal footing with other messages. However, like the amendment in *National Advertising,* Ordinance 92–3–6 merely places signs previously given special treatment under § 4–5–9 on equal footing with other signs within the Village. Similarly, by deleting the "special permission" language from § 4–5–10–3(A), Ordinance 92–3–6 places all ground signs on equal footing.