First National Bank of Skokie, as Trustee Under Trust No. 530, and Old Orchard Estate Builders, Inc., a Corporation, Plaintiffs-Appellees, v. Village of Skokie, a Municipal Corporation, Defendant-Appellant, and Board of Education, School District No. 68, Intervenor-Appellant.

Gen. No. 51,162.

First District, Fourth Division.

June 30, 1967.

Harvey Schwartz, of Skokie, for defendant-appellant.

Arnstein, Gluck, Weitzenfeld & Minow (formerly Kahn, Adsit, Arnstein, Gluck, Weitzenfeld & Minow) of Chicago (Daniel J. Gluck, John F. McClure and Arnold S. Weisler, of counsel), for intervenor-appellant.

Paul Peter Black, of Chicago, for appellees.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

Plaintiffs are the owner and the contract purchaser of the property in question. Defendant, Village of Skokie, and Intervenor, Board of Education, appeal from a decree which adopted (with one modification to be discussed subsequently) the report of a Master, and restrained enforcement by the Village of its zoning ordinance insofar as it applied an "R–2, R–3" classification to the property and authorized its development with multiple-apartment buildings.

The subject property is vacant land of approximately 13.36 acres in what would be a rectangular shape but for the exclusion of an area in the northeastern corner. As found by the Master, the land is bounded as follows:

North: South side of Simpson Street from the rear lot line of lots on the east side of Lavergne Avenue to a point about 185 feet west of unopened LaCrosse Avenue.

West: Rear lot line of residential lots on east side of Lavergne Avenue.

South: Middle line of Foster Avenue extended, undedicated and unopened for a distance of 654.80 feet, and along the north side of unopened Foster Avenue for a distance of approximately 313 feet.

East: The unopened north and south alley to the east of LaCrosse Avenue to the unopened east and west alley south of Simpson Street.

A small neck of the subject property extends east to the west side of Skokie Boulevard.

Directly across the street and north of the site is the large Old Orchard shopping center of Marshall Field & Co. To the west are the rear lot lines of a row of single-family homes facing onto Lavergne Avenue. To the south of the property are the Village refuse disposal site at the west end and, at the east end fronting on Skokie Blvd., a furniture store. Continuing south along the west side of Skokie Blvd. are a theatre, a second furniture store, a grocery, a discount store and a restaurant. Across the boulevard to the east, beginning at the southeast corner of Skokie Blvd. and Simpson Street and proceeding south, there are a drive-in restaurant, kiddy amusement park and golf driving range, a shopping center, a motel and restaurant and a gasoline station. Beginning on the northeast corner of Skokie Blvd. and Simpson Street and running north along the east side of Skokie Blvd. is the large Memorial Park Cemetery. Simpson Street and Skokie Blvd. are both heavily trafficked thoroughfares.

Old Orchard Estate Builders, Inc., purchased the land from the other plaintiff acting as trustee for Marshall Field & Co., for $1,000,000 under a contract dated March 4, 1963, amended September 30, 1963, limiting the purchaser to application for rezoning of the property to multiple-apartment use and barring it from applying for commercial use. (Cost of the proposed construction would run approximately $5,000,000.) At that time, the property was zoned for single and two-family use within the R-2 and R-3 classifications. Plaintiffs' proposed multiple-apartment development would require an R-4 classification. They sought and received approval of their plan at four different governmental levels of the Village of

■■■■■■■■■■■ ■■■■■■

Skokie: The Department of Community Planning, the Department of Engineering, the Fire Department, and, finally, the Skokie Plan Commission, which held public hearings on plaintiffs' application and then, on July 2, 1963, unanimously recommended to the Village Board of Trustees that they approve plaintiffs' request. This the Trustees refused to do, and on October 7, 1963, plaintiffs filed this action in equity seeking injunctive relief. After extensive hearings, the Master, on October 15, 1965, filed his report which recommended "that the Court enter a decree granting relief to the plaintiffs for four story, multiple apartment buildings." On October 28, 1965, the Chancellor approved the Master's report but in his decree modified the Master's recommendations to allow buildings of five stories.

On October 25, 1965 (between the dates of the Master's report and the decree), the Board of Trustees adopted an amendatory ordinance which rezoned the subject property to "B-2 Commercial District zoning classification," in which zone multiple-apartments would also be prohibited. In regard to this action by the Village the Chancellor had the following to say:

> With reference to the ordinance of October 25, I would like to make this comment, gentlemen:

> That it is a longtime American tradition that I think is embodied in our law, that we just do not change the rules in the middle of the game, and this is a flagrant violation of that law, and in my judgment it is reprehensible conduct. Prepare the Decree.

The first point argued on this appeal by the Village and the Board of Education is that the amendatory ordinance was duly enacted by the Trustees after submission to and approval by the Plan Commission. They contend therefore that, regardless of whether or not the Chancellor should have been bound, he did not consider his decision

in light of the ordinance and the case should at least be remanded for a hearing on the validity of the "B–2" classification, since this court is bound by the presently existing law under which the subject property is zoned "B–2" instead of "R–2, R–3" as attacked by the plaintiffs' complaint.

It is true, as contended by the Board and the Village, that a reviewing court must dispose of a case upon the law as it exists at the time of its decision and not upon superseded law in effect at time of trial when valid amendatory procedures have been followed:

> There is no vested right in the continuance of a law, (citation) and it has been held many times that where the legislature has changed the law pending an appeal the case must be disposed of by the reviewing court under the law as it then exists, and not as it was when judgment was entered in the trial court. (Citation.) (Fallon v. Commerce Commission, 402 Ill 516, 526; also see Ward v. Village of Elmwood Park, 8 Ill App2d 37, 39.)

It is also true that a municipality may properly refuse to issue a permit for construction which is permitted under existing zoning classifications if the municipality has already begun statutorily prescribed amendatory procedures (such as public hearings on planning commission recommendations for ordinance amendments) which would prohibit the proposed building development (Chicago Title & Trust Co. v. Palatine, 22 Ill App2d 264, 268, 160 NE2d 699) ; and provided the municipality has not unreasonably or arbitrarily refused or delayed the issuance of a permit, as was the situation in Phillips Petroleum Co. v. Park Ridge, 16 Ill App2d 555, 565–566, 149 NE2d 344. In that case the court reiterated the Fallon rule (supra), but ordered issuance of a permit to a plaintiff who could have acquired a vested right in the continuance of the

zoning ordinance had it not been for the improper action of the city in passing a resolution suspending the issuance of all such permits until a commission created by the resolution reported on an amendment, subsequently enacted, which prohibited the proposed development. It was not questioned that a city or village has the right to amend its zoning ordinances, but to do so they must follow statutory requirements of seeking recommendations of a plan commission and holding public hearings. At the time the plaintiffs in the Phillips Petroleum case applied for their permit, this procedure had not been initiated and was begun only after the permit was received. The court therefore held that it was improper and, hence, a statutorily invalid action on the part of the city to have suspended the issuance of permits until the plan commission might make its recommendations.

In the instant case, if effect were to be given to the October 25, 1965 ordinance amendment, the zoning classification now applicable would be "B-2", but such was not the case at the time of the decree. Article XIII, § F, p 143, of the 1965 Skokie Zoning Ordinance provides a monetary fine for "[a]ny person, firm, or corporation who violates, disobeys, omits, neglects, refuses to comply with, or resists the enforcement of any of the provisions of this ordinance. . . ." The ordinance therefore falls within Ill Rev Stats 1965, c 24, article I, division 2, § 4, which provides in pertinent part:

> All ordinances of cities, villages and incorporated towns imposing any fine, penalty, imprisonment, or forfeiture . . . shall . . . (2) be published at least once, within 10 days after passage. . . . *No such ordinance shall take effect until 10 days after it is so published.* (Emphasis supplied.)

The amendment to the ordinance was enacted on October 25, 1965, but was not published until October 31, so the

333

zoning effective at the time of the decree on October 28 was the "R–2, R–3" classification. Cybulski v. Eagan, 11 Misc2d 251, 173 NYS2d 379, 380 (1958). This was the classification which had been attacked by plaintiffs' complaint, which had been under consideration at the hearings before the Master, and which the Chancellor properly considered when he restrained enforcement of the Village ordinance as applied to the subject property. The decree also specifically ordered:

. . . . . .

3. The Defendant, Village of Skokie, its officers, employees, servants and agents, . . . are hereby enjoined and restrained from enforcing, or attempting or threatening to enforce the Zoning Ordinance, or any amendments thereto, . . . against the Plaintiffs herein, . . . ; and the said Village . . . [is] hereby enjoined and restrained from enforcing or threatening to enforce any other ordinance or amendments thereto, which may hereafter be passed which purports or may prevents [sic] the Plaintiffs . . . from using the said property for apartment use. . . .

4. The Defendant, Village of Skokie, . . . [is] hereby enjoined and restrained from rezoning, or attempting or threatening to rezone, the property of the plaintiffs to another zoning district classification, the effect of which would be to thwart or prevent the Plaintiffs from using their property for multiple dwelling apartment uses, . . . .

■ ■ "It is beyond the power of the court to permanently bring to a halt" the legislative function of zoning, but the decree here is not defective on that score since it applies only to the rights of the plaintiffs regarding this specific use and does not affect future exercise by the Village of its legislative rights and duties. Sgro v. Howarth, 54 Ill App2d 1, 10–11, 203 NE2d 173. Although

Sgro was factually more similar to Phillips Petroleum, supra, than to the case now before us, in that Sgro had applied for a permit permissible under the existing zoning ordinance, the court found that the rights of the parties had "crystallized" at the time application for the permit was filed. (54 Ill App2d, at page 5.) In the instant case, the rights of the parties in relation to the specific use proposed for the property had crystallized with the entry of the decree, if not before.

■■■■■ The question presented herein is distinguishable from that considered by the decisions in Phillips Petroleum and Sgro in that plaintiffs here did not file suit in reliance upon an existing ordinance under which they would have been entitled to a building permit. Nor is this case controlled by Chicago Title & Trust Co. v. Palatine, 22 Ill App2d 264, 160 NE2d 699, where the court denied mandamus for a permit refused by the village because lawful amendatory procedures had been commenced prior to the time of application. Although apparently more similar but nevertheless distinguishable is Ward v. Village of Elmwood Park, 8 Ill App2d 37, 130 NE2d 287, where subsequent to the filing of a suit to declare an existing ordinance invalid but prior to decision, the village passed an amendatory ordinance which the trial court refused to consider applicable to the controversy. In agreeing with the trial court that under Fallon the old ordinance was no longer valid, this court reversed the trial court's finding that the new ordinance was inapplicable. (8 Ill App2d, at pp 39–40). In the instant case, the amendment was not yet in effect, as noted above, so we are not controlled by Ward. Instead, we are confronted with a situation where the defendant in effect admitted the invalidity of the existing "R–2, R–3" classification by attempting an amendment, and also by not arguing before the Master, the Chancellor or this court that plaintiffs' use should be denied because of the terms

of the ordinance existing at the time of entry of the decree.[1] As a defense to plaintiffs' action, the Village argued that a "B–2" commercial use would be the highest and best use for the subject property. The Master exhaustively considered this position and found for the plaintiffs, taking care to note that his decision did not apply the presumption of validity normally accorded existing zoning classifications. In approving this finding and embodying the recommendations in a decree, the Chancellor likewise, and properly, refused to apply such presumptions. We have applied the traditional and well-known considerations of surrounding uses, values and taxes, buffering effects of multiple-apartment developments, community needs, etc., and agree with the findings of the Master and Chancellor that plaintiffs' proposal would accomplish the highest and best use for the subject property as compared with either "R–2, R–3" or "B–2."

The amendatory process was begun only after an adverse finding by the Master and was not completed until after the Chancellor's decree and injunction. While we do not decide that plaintiffs acquired any vested rights to their proposed use merely by filing suit to have the old ordinance declared invalid, we do find the Village was subject to the injunction below restraining interference with the particular use granted plaintiffs by the decree.

---

[1] The Master found:

. . . . . .

3. There is no dispute in the record that the existing zoning is not the highest and best use for the subject property. The experts for both sides are in agreement that the subject property does not have the characteristics for single family or two family dwellings.

. . . . . .

6. The inquiry is, therefore, as to the framing of a decree which in terms will strike down the existing zoning but not leave the subject property unzoned, and which will limit the property owner and the Village as to future use, and will end litigation on the subject matter.

To hold otherwise would severely weaken the judicial process when it is properly invoked to provide equitable remedy in zoning cases. By repeated eleventh-hour amendments to the zoning ordinance (or thirteenth-hour, as in this case), a resourceful village board could prolong litigation endlessly and utterly deprive an equity petitioner of any meaningful moment at the Chancellor's ear. We agree that the decision in Ward may be read to have held that the legislative powers include those of amendment while the issue is still under litigation at the trial stage. Nevertheless, we distinguish the application of that case where, as here, the fact-finding stage of the litigation has been completed, a decision reached, and a decree entered.

■ In the instant case, the Village, in effect, admitted that the "R–2, R–3" classification was unreasonable when it interposed no defense of that classification before the Master and then sought to amend the ordinance. This amendatory action was begun only after the plaintiffs' proposal to build apartment houses had been approved by four other levels of the municipal government and a Master's report (representing a careful evaluation of many pages of testimony and exhibits) had found adversely to the Village. We conclude that the decree should be affirmed. We do not find a "naked abuse of municipal power," as plaintiffs contend on the basis of Massaglia v. Commissioner of Internal Revenue, 286 F2d 258, 262 (10th Cir, 1961), but we do decide that the amendment enacted by the Village had no effect on the rights of the plaintiffs as established by the decree. The existing classification was attacked as unreasonable when applied to prevent the construction of a multiple-dwelling apartment complex, the Master and Chancellor agreed and found for plaintiffs and, after reviewing the evidence and findings below, we agree. As we have indicated, the amendment became effective after the litigation below

was concluded, and, under the circumstances of this case, should have no effect on our decision.[2]

However, we find that the modification by the Chancellor of the Master's recommendation to allow a five-story, fifty-foot height limitation instead of the four-story, forty-foot limitation found in the "R–4" classification established by the Village, was invalid and improper and is hereby reversed. As the Master noted, the existing "R–4" classification of the Village which applies to multiple-apartments permits four-story buildings and, since that is the use sought by plaintiffs, the four-story, forty-foot limitation should apply. The Master (Jacob Shamberg) stated this proposition very well in his report:

> While the Court may strike down limitations in the ordinance, it may not introduce new language into the ordinance by adjudging a new height concept not in keeping with the character of multiple apartment development in the Village and permit the construction of five story apartment buildings, . . . .

We are controlled by this principle even though our own judgment might well coincide with that of the Chancellor on the issue. See National Brick Co. v. County of Lake, 9 Ill2d 191, 197, 137 NE2d 494, where the Supreme Court said: .

> A court cannot substitute its judgment for that of the county board and, in effect, make a zoning classification of its own. The factors or reasons which make

---

[2] We do not wish to be understood as indicating that the conflict between a B–2 classification and plaintiffs' proposed development would necessarily be resolved in favor of the Village even if B–2 zoning were clothed with a presumption of validity. We note that there was voluminous expert testimony in support of plaintiffs' position that multiple-apartment buildings represent the highest and best use for the subject property as against any other kind of development.

appropriate a particular zoning restriction are matters for legislative policy.

■ Plaintiffs filed a cross appeal from the Chancellor's order permitting the Board of Education to intervene. We make no ruling on that point as we do not consider such an order to be appealable. The cross appeal is consequently dismissed. Harris Trust & Savings Bank v. Briskin Mfg. Co., 63 Ill App2d 12, 211 NE2d 32.

■■ On the issue raised by the Board of Education, the Master's report analyzed the extensive evidence presented. Considering it in the light most favorable to the Board, he found that even under the "R–2, R–3" classifications, an expansion of school facilities would probably be required; and that for this purpose the Board already has the land available, as well as untapped bonding and taxing power. Further, the Master and Chancellor held that while the school situation might be a factor to be considered in this kind of case, it cannot be conclusive. We agree, and note that additional burdens on responsible governmental bodies may not properly justify otherwise unreasonable, arbitrary, and discriminatory restrictions on the use of private property. On the simple economics of the issue, it is apparent that if future developments were limited to commercial or industrial enterprises which would produce more tax money without the addition of any school children, the fiscal position of the school board would be strengthened, but only at the cost of circumventing the school's raison d'être. As explained by the Illinois Supreme Court in La Salle Nat. Bank v. Village of Skokie, 26 Ill2d 143, 146, 186 NE2d 46, in response to evidence of a school problem offered in opposition to a proposed apartment development:

Because of urban concentration, coupled with the population explosion, practically every school district is beset with the problem of keeping facilities abreast of enrollment, regardless of whether it is developed

339

as a single-family or multiple-dwelling community. (See also Springfield Township v. Bensley, 88 A2d 271, 277, 19 NJ Super 147 (1952); Opgal v. Burns, 189 NYS2d 606, 611 (1959).)

We conclude that the contentions of the Board of Education in the instant case are untenable.

The decree of the Circuit Court is affirmed except as to the height limitation included therein, and, for the purpose of modifying the decree in that respect (in accordance with the views expressed in this opinion), the cause is remanded.

Affirmed and remanded with directions for modification of decree.

DRUCKER, and McCORMICK, JJ., concur.