**EASON OIL COMPANY, Appellee,**

v.

**Robert S. UHLS, Director, Building Department and The Oklahoma City Municipal Improvement Authority, Appellants (four cases).**

**Nos. 45240–45243.**

Supreme Court of Oklahoma.

Jan. 8, 1974.

Harry C. Marberry, Oklahoma City, for appellee.

Roy H. Semtner, Municipal Coun., by Tom B. McGee, Asst. Mun. Coun., Oklahoma City, for appellant, Robert S. Uhls, Director, Building Department.

Andrews, Mosburg, Davis, Elam, Legg & Kornfeld, by A. P. Murrah, Jr., Oklahoma City, for appellant-intervenor, Oklahoma City Municipal Improvement Authority.

DOOLIN, Justice.

The issue for determination in these four cases is whether the Appellee's leasehold rights to develop for oil and gas have been improperly restricted by the ordinances of the City of Oklahoma City.

Appellee (hereinafter referred to as "Eason") sought permission to drill oil and gas wells, or a variance, in an area of Oklahoma City which had been designated as a part of the "non-drilling" zone of that city. Subsequent to the annexation of that area by Oklahoma City and the consequential classification of that area as a non-drilling zone, Eason acquired sufficient leases to seek the variances in question. The variances were denied, and the Board of Adjustment of The City of Oklahoma City refused to allow the variances and grant Eason drilling permits. Eason then appealed the Order of the Board of Adjustment to the District Court of Oklahoma County which held a trial de novo on the issue of whether the drilling should be permitted, and reversed the Board of Adjustment of Oklahoma City. Oklahoma City and the Oklahoma City Municipal Improvement Authority (hereinafter referred to as the "Water Trust"), which had been allowed to intervene in the District Court of Oklahoma County, brought these appeals.

At the trial de novo Eason's evidence showed that it had expended money and effort to acquire leasehold rights in the area from which it intended to explore and produce oil and gas at a profit. Oklahoma City and the Water Trust showed that Eason sought permits to drill oil and gas wells in the area which would drain into and tend to pollute and contaminate their proposed "West Elm Creek Reservoir", a part of their comprehensive long-range plan for the development of a municipal water supply which would adequately serve the needs of the people of Oklahoma City. The District Court of Oklahoma County reversed the Board of Adjustment of Oklahoma City, and allowed the drilling permits subject to certain strict safeguards set out by that Court, which, in addition to safeguards for drilling operations in the area recently promulgated by the Corporation Commission of the State of Oklahoma, were thought to adequately protect the proposed water supply from pollution and contamination.

In its Memorandum Opinion rendered in connection herewith, the District Court of Oklahoma County discussed zoning restrictions prohibiting drilling of oil wells within a municipality, recognized them as a valid exercise of the police power so long as they are reasonable and not arbitrary, capricious or discriminatory. The trial court then concluded that Oklahoma City's drilling prohibition, in this situation, is not related to the public health, safety, morals, or general welfare in such a manner as to be a valid exercise of the police power since the water supply Oklahoma City seeks to protect is now only proposed and the evidence indicated only that it might be polluted or contaminated by the additional wells. Thus the trial court held that Eason was being deprived of private property without due process of law in contravention of the Oklahoma and Federal Constitutions, and allowed the variance subject to the above-mentioned conditions.

Oklahoma City and the Water Trust contend, among other things, that the trial court had no authority to consider the constitutionality of Oklahoma City's zoning ordinance sua sponte. This contention is without merit, since, as the trial court said in its memorandum opinion: (1) a trial judge is obligated by his status as such to consider all constitutional, statutory, or decisional law applicable, and (2) Eason did in fact raise the question of deprivation of property without compensation in its Notice of Appeal to the District Court.

The propriety of the trial court's ruling goes then to the merits of the fundamental issue: Can Oklahoma City attempt to prohibit drilling activities in the area which will drain into its proposed municipal water supply? Zoning ordinances have been held to be a valid delegation of the police

power of a political subdivision of the State; Village of Euclid et al. v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; and, Oklahoma City's zoning ordinances have been held to be constitutional by this Court, In re Dawson, 136 Okl. 113, 277 P. 226, specifically Oklahoma City's non-drilling zoning ordinances, Anderson-Kerr v. Van Meter, 162 Okl. 176, 19 P.2d 1068; Van Meter v. Westgate Oil Co., 168 Okl. 200, 32 P.2d 719; Beveridge v. Harper & Turner Oil Trust, 168 Okl. 609, 35 P.2d 435; Gruger v. Phillips Petroleum Co., 192 Okl. 259, 135 P.2d 485.

In determining whether the trial court properly overruled the Board of Adjustment of Oklahoma City, the rules to be followed in such de novo trials should be examined. In the case of Application of Shadid, 205 Okl. 462, 238 P.2d 794 (1951), we said:

"The presumption in favor of the correctness of the determination arrived at by the board of adjustment of Oklahoma City in refusing to issue a permit for a proposed [building for a nonconforming use] when such determination has in effect been affirmed by the district court on appeal, should be given great weight; and the discretion exercised should not be interfered with unless arbitrary or clearly erroneous."

Earlier in the case of Cash v. Beveridge, 183 Okl. 310, 82 P.2d 665, we quoted *Dawson,* supra, as follows:

"There is a presumption in favor of the correctness of the determination arrived at by the board of adjustment, and the court should not interfere with the discretion vested in that board unless that discretion has been arbitrarily exercised or is erroneous in law."

The trial court was obligated to uphold the Board of Adjustment unless there clearly was an arbitrary or abusive exercise of discretion. As stated in Anderson-Kerr v. Van Meter, supra, the appeal from a de novo trial of a matter of purely equitable cognizance will not be reversed by this Court unless clearly against the weight of the evidence. Thus, an examination of the evidence presented in the trial court in light of the holding of the Board of Adjustment of Oklahoma City is in order. See City of Tulsa v. Swanson, 366 P.2d 629 (Okl.1969).

In the second syllabus of Van Meter v. Westgate Oil Co., supra, 32 P.2d 719, this Court discussed four conditions that must be present in favor of the oil company before a permit to drill in violation of the non-drilling ordinances of Oklahoma City will be granted: "First, that the granting of such permit would not be contrary to public interest; second, that the literal enforcement of the provisions of the ordinances will result in unnecessary hardship; third, that by granting the permit contrary to the provisions of the ordinance, that 'the spirit of the ordinance shall be observed'; fourth, that by granting of such permit 'substantial justice be done.'"

Evidence adduced at trial by Oklahoma City and the Water Trust tended to show the proposed municipal water supply of Oklahoma City might indeed be polluted or contaminated by surface drainage if drilling operations are permitted in the drainage area. In the Michigan case of City of North Muskegon v. Miller, 249 Mich. 52, 227 N.W. 743, that court held that reversal of a drilling permit was validly exercised upon a showing of potential pollution or contamination of the city's source of water. Protection of a public water supply we believe to be in the public interest, and even though Eason contends that the possibility of pollution or contamination is too remote, we are convinced there is present here a reasonable probability of contamination under the most careful of drilling and development programs.

Van Meter v. Westgate, supra, further states that before an exception to drilling can be allowed the oil company must show that literal enforcement of the provisions of the ordinance will result in unnecessary

hardship. Eason has shown that financial hardship and potential loss of profits would result from a literal enforcement of the ordinance concerned, but financial loss in itself is not absolute proof of unnecessary hardship, for in Van Meter v. H. F. Wilcox Oil & Gas Co., 170 Okl. 604, 41 P. 2d 904, we held:

"In considering the basic foundation of zoning ordinance enacted in the proper exercise of police power, financial loss to an individual, firm, or corporation affords no adequate ground for impeding or standing in the way of the general good and promotion of the public welfare."

See also American Oil & Refining Co. v. Beveridge, 177 Okl. 203, 58 P.2d 337.

We do not believe it necessary to discuss the third and fourth prerequisites set forth in Van Meter v. Westgate, supra, for in our opinion Eason has failed to meet at least two of the basic requirements for obtaining a variance in a prohibited area. We do not attach unusual significance to the points heretofore considered, nor by setting them out in detail do we mean to give them more emphasis than the other prerequisites; but, suffice it to say, unless all four conditions precedent are present, then an oil developer must fail in his quest for a variance from a municipal drilling ordinance.

Since Eason has failed to meet the standards necessary to entitle it to the granting of a variance and since the holding of the trial court is clearly against the weight of the evidence, same must be reversed by this Court. We do not consider other grounds and assignments of error as made by the Appellant, for in our opinion such determination is unnecessary.

Reversed.

DAVISON, C. J., and LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concurring.

WILLIAMS, V. C. J., and IRWIN, BERRY and HODGES, JJ., dissenting.