In the Matter of the Application of Julius BANKOFF for a Conditional Use Permit, Plaintiff/Appellee,

v.

BOARD OF ADJUSTMENT OF WAGONER COUNTY, Defendant/Appellant,

David Williamson, Nick Robson, Jim Vestal and the Wagoner County Citizens for a Cleaner Environment, Intervenors/Appellants.

BROWNING–FERRIS, INC., a Delaware Corporation, Plaintiffs/Appellee,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF WAGONER, Defendant/Appellant,

David Williamson, Nick Robson, Jim Vestal and the Wagoner County Citizens for a Cleaner Environment, Intervenors/Appellants.

Nos. 69586, 78146.

Supreme Court of Oklahoma.

May 31, 1994.

Joseph R. Farris, Jody R. Nathan, Michael A. Conger, Feldman, Hall, Franden, Woodare & Farris, Tulsa, for plaintiff/appellee.

William Hunter Dodson, District Attorney, Michael McEver, Monty Strout, Asst. Dist. Attys., Wagoner, Charles William Shipley, Blake K. Champlin, Shipley & Inhofe, Tulsa, John L. Boyd, Robert J. Nichols, Boyd & Nichols, Tulsa, for defendant/appellant.

### ORDER

LAVENDER, Vice Chief Justice.

Rehearing is granted and opinion of this Court issued June 16, 1992 is **WITH-DRAWN.**

SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

SUMMERS, J., concurs in result.

HODGES, C.J., and ALMA WILSON and KAUGER, JJ., concur in part, dissent in part.

PER CURIAM:

Numerous issues are presented for our determination from these consolidated cases. Generalized and respectively considered they are: 1) whether a zoning amendment enacted after the first appeal was filed renders the denial of Appellee's (Julius Bankoff) conditional use permit (CUP) and subsequent appeal of that decision moot; 2) whether the trial court erred in its application of the standard of review; and 3) whether Appellant (Board of Adjustment of Wagoner Coun-ty) acted improperly in denying Bankoff a conditional use permit. We answer questions one and two in the negative and question three in the affirmative.

On March 3, 1986, Julius Bankoff applied to the Wagoner Metropolitan Area Planning Commission for a conditional use permit to operate a sanitary landfill on a tract of real property located in Wagoner County, Oklahoma. The Board of Adjustment for Wagoner County (Board) denied the permit by a vote of five to zero on April 22, 1986. Bankoff appealed the Board's decision to the District Court. Prior to trial, landowners and residents (Intervenors) filed a Motion to Intervene which was granted. After a de novo non-jury trial, the trial court found the Board's decision was arbitrary and capricious, reversed the Board's denial and ordered the Board to work with Bankoff to prepare a CUP setting forth appropriate conditions for the operation of a solid waste disposal facility in accordance with the Wagoner County Zoning Ordinances.

Both the Board and Intervenors appealed the trial court's ruling (Sup.Ct.Case No. 69,-586), contending the court erred in finding the decision of the Board was not supported by the evidence, was unreasonable, contrary to law, and arbitrary and capricious, and that the judgment, reversing the Board's decision was against the clear weight of the evidence. Further, they alleged the court erred in its position on burden of proof for not requiring Bankoff to prove compliance with Section 6.3.2.1 of the city ordinance.

While that appeal was pending, the Board of County Commissioners of the County of Wagoner (Commissioners) amended the Wagoner County Zoning Ordinance, the effect of which, if applicable, rendered moot Bankoff's application for a CUP and subsequent proceedings. The Board and Intervenors filed a Motion to Dismiss in light of the amendatory provision and its effect on Bankoff's appeal. Consequently, we remanded for an initial determination of the effect of the amendment.[1]

---

1. "An appellate forum cannot exercise first-instance jurisdiction by making initial decisions on facts or law. When necessary findings are absent, the case must be remanded with directions that they be made by the trial court." *American Ins. Ass'n v. Indus. Com'n,* 745 P.2d 737, 740 (Okla.1987).

Meanwhile, Bankoff, represented by its lessee, Browning–Ferris Incorporated (BFI), filed suit in district court attacking the validity of the zoning amendment. Intervenors were again permitted to intervene. Bankoff/BFI moved the cases be consolidated which motion was granted by the trial court.

On August 6, 1991, the trial court, pursuant to our directions, made the findings of fact and conclusions of law. Among other things, the court found that at the time Bankoff filed his application for a CUP to operate Pine Meadows Landfill, the zoning regulations in effect permitted that use in such an agriculturally zoned area. Also that BFI was then operating the nearby (across the street) 51st Street Landfill and had been doing so since 1979. The district court had reversed the denial of Bankoff's application and that decision was appealed by Intervenors. Further, the Board adopted the zoning amendment less than 20 days after BFI obtained a permit from the Oklahoma State Department of Health to operate the proposed Pine Meadows Landfill.

The court concluded that Bankoff/BFI had a vested right in the operation of the landfill; that Bankoff/BFI had done everything legally possible to obtain the CUP; that the court order permitted the operation; that the Oklahoma State Department of Health had issued its permit authorizing the operation; and, that BFI had expended a substantial investment toward the operation. Moreover, the trial court determined that Bankoff/BFI was not precluded from seeking declaratory relief even though administrative remedies had not been exhausted. Further, the present appeal was not rendered moot by the amendment because Bankoff/BFI had a vested right to the use of the property and therefore, the zoning amendment was inapplicable as to Bankoff's application. The tri-

al court also decided the Appellants were estopped to assert the requirement of "actual use" in that Bankoff/BFI was so prevented from going forward given the automatic stay imposed on it.[2]

▆ Questions concerning the retroactive application of zoning amendments have often been before the courts. It is axiomatic that under ordinary circumstances a zoning enactment cannot be applied retroactively to require destruction of an existing structure or a substantial change in an existing lawful use of property.[3] It is recognized, however, that a property owner does not have a vested interest or right in the continuation of an existing zoning classification so that his mere hope of developing the land in a particular way in the future will not be protected against later zoning amendments. Circumstances may occur, however, which will give rise to judicial recognition of a property interest sufficient to protect the owner's intended use from the reach of an otherwise applicable amendment to the zoning classification. In drawing that line between a landowner's hope for the contemplated future development of his land and an interest which the courts will recognize as vested and therefore protected, several judicial tests have evolved.

Most courts hold that while a landowner will not ordinarily be immune from a zoning change if he has done nothing more than obtain a permit from the licensing authority, he will be protected if he has made substantial expenditures in reliance thereon, or has committed himself to his substantial disadvantage in reliance on the permit or zoning provisions before the amendment went into effect, even though no construction has begun.[4]

2. The automatic stay statute, 12 O.S.1991, § 974.1, provides in pertinent part as follows: "[E]xecution of the judgment or final order of any judicial tribunal, ... against any county ... is automatically stayed ... until appeal has been finally determined ..."

3. 2 Rathkopf, *The Law of Zoning and Planning*, Ch. 58 § 1 et seq.; 83 Am.Jur.2d, Zoning and Planning §§ 624–27. *See, Shaw v. Calvary Baptist Church*, 184 Okla. 454, 88 P.2d 327 (1939).

4. 2 Rathkopf, *supra*, ch. 57, § 1 et seq.; 83 Am.Jur.2d, Zoning and Planning, §§ 645–50; Annot., 49 A.L.R.3d 13 (1973); Annot., 50 A.L.R.3d 596 (1973); *Thomas v. Zoning Bd. of Appeals*, 381 A.2d 643 (Me.1978); *Town of Paradise Valley v. Gulf Leisure Corp.*, 27 Ariz.App. 600, 557 P.2d 532 (1976).

Other courts, without rejecting the general rule recognizing vested interests, have also established a "balance of equities" test as an alternative means of weighing and determining the respective interests of the property owner and zoning authority.[5]

■ Under both tests the courts give consideration to the good faith of the landowner as well as the substantiality of the landowner's reliance on the existing zoning, and will protect his interest under either theory where he has made substantial expenditures or committed himself to a substantial disadvantage in reliance thereon. The conduct of the licensing board, particularly insofar as considerations as to whether the zoning change enacted was the result of maliciousness or if it was intended and directed toward the particular landowner and his intended use, is also a factor considered by the courts.

Some jurisdictions have noted that if there is evidence of bad faith, delaying tactics, prejudice or reliance, a court will apply the law as it existed at the time of application. In *Marmah, Inc. v. Greenwich*,[6] the Supreme Court of Connecticut resolved that given the circumstances, "it would be inequitable to allow the changed building zone regulations to act as a bar ... where the trial court reasonably concluded that ... the commission failed to provide proper reasons for denying the site plan application, and that the reasons that were provided were not substantiated by the evidence before the commission." *Marmah* is analogous to our case. Both cases involve zoning ordinances where an applicant's request was denied and there was subsequently a determination by the trial court that the denial was improper and

there was a subsequent amendment to the zoning ordinance which would prevent the proposed use if applied to the applicant. The Connecticut court, as we do today, refused to permit the inequitable result which would occur if the amendment applied.

Likewise, the court in *First National Bank of Skokie v. Village of Skokie and Board of Education*,[7] stated that to give effect to the subsequent amendment "would severely weaken the judicial process when it is properly invoked to provide equitable remedy in zoning cases. By repeated eleventh-hour amendments to the zoning ordinance (or thirteenth-hour, as in this case), a resourceful village board could prolong litigation endlessly and utterly deprive an equity petitioner of any meaningful moment...."[8]

■ While we are not deciding that the Commission acted in "bad faith" in adopting this amendment, we do find that the equities require finding that the amendment did not apply to Bankoff and his intended use of the property. Likewise, it is unnecessary to decide here whether BFI had a vested right to use the property as a landfill as held by the trial court, for even without a finding of a vested right, equitable considerations lead us to affirm the trial court's judgment in favor of BFI.

Bankoff had done everything legally required of him. The state had approved the proposal. The trial court had determined that the Board should have issued the permit. The Health Department had issued its permit. A substantial amount of money ($800,000.00) had been spent on the project. But for the statutory automatic stay imposed by reason of the appeal, the landfill would

---

5. *See*, Annot., 49 A.L.R.3d 13 (1973); *State ex rel. Humble Oil & Refining Co. v. Wahner*, 25 Wis.2d 1, 130 N.W.2d 304 (1964).

6. 176 Conn. 116, 405 A.2d 63, 66–67 (1978) (citations omitted). *See also Orange Ave., Inc., v. West Haven*, 761 F.2d 105, 113 (2nd Cir.1985) citing *Marmah* for the proposition that "[e]ven as a matter of zoning law, however, a court will not allow changed building zone regulations to act as a bar to a building project where it would be inequitable to do so."; *State ex rel. Humble Oil & Refining Co. v. Wahner*, 25 Wis.2d 1, 130 N.W.2d 304 (1964); *First Nat. Bank v. Skokie*, 85 Ill. App.2d 326, 229 N.E.2d 378 (1967).

7. 85 Ill.App.2d 326, 229 N.E.2d 378 (1967).

8. *Skokie*, 229 N.E.2d at 384. We note that under Oklahoma jurisprudence, it would be insufficient to prevent the after enacted legislation from applying at any stage of the litigation regardless whether the fact-finding stage of litigation was complete, a decision had been reached and a decree entered, since this action would not give rise to a "vested right". Nevertheless, we find the *Skokie's* court reasoning for it's holding supportive of our equitable decision herein.

have been in actual use. Given this evidence, we find it inequitable to prohibit Bankoff's application by reason of the amendment.

■■■ We find, therefore, that under the facts peculiar to this case it would be inequitable to give effect to the amendment. Our decision should be seen as a narrowly-construed exception based strictly on equitable considerations given the facts peculiar to this case. The issues presented on appeal are not moot and we will proceed on the merits.[9]

## I. STANDARD OF APPELLATE REVIEW

■■■ In reviewing cases which are of an equitable nature, the trial court's ruling must be sustained unless against the clear weight of the evidence.[10] In so reviewing, we will take into consideration the factual basis for the trial court's decision.[11] A correct judgment will be affirmed regardless of the reasons given for its rendition. This Court is bound neither by the reasoning nor the findings of the trial court. When the law and the facts warrant, an equity decree may be affirmed if it is sustainable on any rational theory and the ultimate conclusion reached is legally correct.[12]

## II. STANDARD OF REVIEW IN REASSESSING A BOARD OF ADJUSTMENT'S DECISION.

The Board's decision to deny the permit was appealed to the district court. Title 19

O.S.1991 § 866.24 provides in part: "[s]aid cause shall be tried *de novo* in the District Court and said Court shall have the *same power and authority as the County Board of Adjustment, together* with all other powers of the District Court in law or in equity." (emphasis added). Wagoner's county ordinance § 6.3.3., parallels this statute.

■■■ The Board argues there is a presumption of validity that attaches to its decision and that the decision must be upheld unless to do so was an "arbitrary or abusive exercise of discretion."[13] We agree there is a presumption of correctness that attaches to the Board's decision which, *if affirmed,* will be accorded "great weight" and not disturbed on appeal to this court unless it is "clearly arbitrary or erroneous."[14] However, as stated in *Vinson v. Medley,*[15] where the Board's decision was *reversed,* the presumption that originally attached to its validity is to be considered as having been overcome by the adverse ruling of the trial court. On appeal to this court, unless clearly contrary to the weight of the evidence, the district court's ruling will not be overturned.[16]

■■■ As to the scope of de novo review, "[t]he trial court must conduct a de novo inquiry and it has the same power as the Board to grant or to deny a variance (or, as in our case, an exception). There must be

9. Appellee did not apply for a *variance* to the zoning amendment prior to filing suit testing the validity of the zoning amendment. For that reason, Appellants plead the doctrine of exhaustion of administrative remedies as grounds for precluding judicial review. We find no merit to Appellants' argument. In that Appellee's efforts to obtain a CUP for a *permitted use* within the district was denied, it goes without saying that any effort to obtain a variance for an *excused violation* to the zoning amendment would have been to no avail. The law does not require one to do a vain or useless thing or to perform an unnecessary act to obtain relief to which one is otherwise clearly entitled. *Allen v. State,* 769 P.2d 1302 (Okla.1988).

We likewise need not reach Appellee's estoppel theory in that we find the amendment ineffectual as to Appellee. However, we note that Appellants' assertion wherein they contend that estoppel may never be employed against the state is incorrect. See *Burdick v. Independent School,* 702 P.2d 48 (Okla.1985) (If the facts and circumstances implicate a prevailing public interest, the

case will except it from the general rule precluding the use of estoppel against the government.)

10. *Application of Volunteers of America,* 749 P.2d 549, 552 (Okla.1988).

11. *Mid–Continent Life Ins. Co. v. Oklahoma City,* 701 P.2d 412, 414 (Okla.1985).

12. *Benham v. Keller,* 673 P.2d 152 (Okla.1983); *Matter of Estate of Bartlett,* 680 P.2d 369 (Okla. 1984).

13. *Eason Oil Co. v. Uhls,* 518 P.2d 50 (Okla. 1974).

14. *Vinson v. Medley,* 737 P.2d 932, 938 (Okla. 1987).

15. 737 P.2d 932, 938 (Okla.1987).

16. *Id.*

a complete examination of all issues, both of fact and law. The cause stands as if it has never been resolved. The burden of proof does not shift but rests on the same party as in the lower tribunal."[17] The burden of proof to establish grounds for an exception is the same (on the applicant) as the burden when a variance is being sought.[18]

■ Thus, the trial court in this case was not required to find that the *denial* of the permit by the Board was arbitrary or unreasonable or an abuse of that agency's discretion before the trial court could, after considering the evidence and weighing the same, order the Board to issue a permit. *Eason Oil Co. v. Uhls*,[19] wherein it states that "[t]he trial court was obligated to uphold the Board of Adjustment unless there clearly was an arbitrary or abusive exercise of discretion," is disapproved.

### III. EVIDENTIARY ANALYSIS

■ The question squarely presented is whether the trial court's decision was clearly contrary to the weight of the evidence. In *Application of Volunteers of America*,[20] we held that "[a]n exception will be granted in accordance with conditions set forth in the ordinance itself." The relevant sections of the Wagoner County Zoning Ordinance in effect when Bankoff commenced application were 3.12, 3.12.1, and 6.3.2.1. These sections define the conditions and expectations of the Board of Adjustment for the granting of a 'conditional use permit' to operate a landfill.

Section 8.2 of the Ordinance defines a 'conditional use' as:

[A] use that would not be appropriate generally *or without restriction* throughout the zoning division or district but which, *if controlled as to number, area, location, or relocation to the neighborhood,* would promote the public health, welfare, morals, order, comfort, convenience, appearance, prosperity, or general welfare. Such uses *may* be permitted in such zoning division or district as conditional uses, if specific provision for such conditional uses is made in these zoning regulations.

The pertinent language of 6.3.2.1 states that: "[t]he Board shall have the power to hear and decide applications for conditional use permits for only such uses for which these regulations require such a permit. The Board shall consider the application and site plan and shall grant or deny the application."

Additionally, in considering the trial judge's decision, as to whether the Board acted correctly in denying Bankoff the permit, we find the following language recited in *Van Meter v. H.F. Wilcox Oil & Gas Co.*[21] relevant.

"The board of adjustment has the power and authority to decide special exceptions.... The board of adjustment cannot have unconfined and unrestrained freedom of action. It is not at liberty to depart from the comprehensive plan embodied in the ordinance.... *In short, the board is refinedly limited in its statutory authority and assumption of power, and this limita-*

---

17. *Id.* As the trial judge noted in the case at bar, while Bankoff/BFI did not have to prove negatives, they did have the burden of proof.

18. *Application of Volunteers of America,* 749 P.2d at 551. Of further note:

Although the terms "special exception" and "variance" were used interchangeably in Oklahoma Cases prior to 1972, the Oklahoma Supreme Court recognized a distinction between the two in *Appeal of Moreland,* 497 P.2d 1287 (Okla.1972). "A 'special exception' ... is not the same thing as a 'variance'...." The Court further held that any previous view that expressed special exceptions were in a legal sense the same as variances is hereby disapproved. *Moreland, supra* at 1292. No Oklahoma cases concerning zoning ordinance since *Moreland* involved special exceptions.

The special exception use is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses, which the legislature has determined to be permissible, absent any fact or circumstance negating the presumption. *Schultz v. Pritts,* 291 Md. 1, 432 A.2d 1319 (1981). This distinction, between a variance and a conditional use permit *has no relevance as to the burden of proof, the standard of review, or the application of the evidence regarding the standard of review.*

19. 518 P.2d 50, 52 (Okla.1974).

20. 749 P.2d at 551.

21. 170 Okla. 604, 609, 41 P.2d 904, 909 (1935) (citations omitted).

*tion should not be lightly abused. It is largely and almost solely by virtue of this power and authority, which has been vested in such administrative boards with right of appeal therefrom to the district court where the matter is tried de novo, that the constitutionality of zoning legislation has been upheld." (emphasis added)*

The evidence presented at trial was extensive. Appellants argued that: 1) there were operational problems of an existing landfill indicative of the kind of problems the proposed site would generate that would be detrimental to the public health, welfare and safety; 2) the property was hydrologically inappropriate; and 3) the proposed use would adversely impact and retard development of the area.

Bankoff/BFI argued that the requirements for a CUP were met. First, they contend that the specific conditions set out in the ordinance as well as general conditions that may be considered by the Board were satisfied by the application and the evidence offered at trial. Further, while Bankoff/BFI does not deny that a landfill operation would have some adverse consequences, given the very nature of the "beast" they contend, in that a landfill operation was already a permitted use within the zoned area, any adverse effects have already been weighed and rejected in favor of the desired benefit.

The trial judge determined that statutory compliance had been met. The court noted that any operational requirements of the ordinance could be monitored by the state and Board. Finally, the court stated that it was impressed with the evidence that: "BFI operates in full compliance with the Oklahoma Department of Health requirements, and to some extent, uses even more strenuous operational procedures."[22]

## CONCLUSION

In reviewing the trial court's decision, we hold that the ruling was not clearly contrary to the weight of the evidence and that the trial court's decision should be affirmed. Bankoff/BFI was entitled to a permit. Indeed, we find the trial judge acted with fair-

ness in granting the Board a second opportunity to decide under what conditions Bankoff would be granted a permit, rather than just ordering the permit issued as he was authorized to do. The trial court's decision is **AFFIRMED.** Cause is **REMANDED** for further proceedings not inconsistent with this opinion.

LAVENDER, V.C.J., and SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

SUMMERS, J., concurs in result.

HODGES, C.J., and ALMA WILSON and KAUGER, JJ., concur in part, dissent in part.

---

**22.** Transcript of Closing Arguments and Ruling, September 4, 1987 at 47.