Dear Senator Brown,
¶ 0 This office has received your request for an Attorney General's Opinion in which you asked, in effect, the following question:
Do the Department of Agriculture's Feed Yard Rules that wentinto effect on June 26, 1997, govern animal feeding facilitiesthat were neither licensed nor in operation but were underconstruction on that date?
¶ 1 Animal feeding operations in this State are governed primarily by a single statute, the Oklahoma Feed Yards Act. 2O.S. 1991 and Supp. 1996, §§ 9-201-9-215 ("the Act"). Under the Act certain facilities with large concentrations of livestock are required to obtain a license from the State Board of Agriculture ("the Board"). 2 O.S. Supp. 1996, § 9-208[2-9-208](A). The Board is authorized by the Act to promulgate rules and regulations to govern the licensing process as well as the administration and enforcement of the Act generally. 2 O.S.1991, § 9-203[2-9-203]. On November 13, 1996, the Board approved a set of amendments to the existing regulations implementing the Feed Yards Act. See 14 Okla. Reg. 1505 (May 15, 1997). These rules ("the Emergency Rules") were approved by the Governor on December 24, 1996. Id. On March 26, 1997, the Board of Agriculture replaced these emergency rules with a new set of regulations now found at OAC 35:15-43-1 — 35:15-43-26. These rules ("the Permanent Rules") were signed by the Governor on May 1, 1997. They went into effect on June 26, 1997.
¶ 2 The Permanent Rules place a number of restrictions on animal feeding operations. Most significantly, perhaps, the Rules require certain animal feeding operations to be set back up to 3/4 of a mile from any dwelling. OAC 35:15-43-5(d). Other provisions require that particular construction techniques be used in building retention lagoons, OAC 35:15-43-11(f)(5)(C), and that lagoon liners meet specific physical criteria, OAC35:15-43-13. In addition, there are new criteria which are more procedural in character. For example, feed yard operators applying for a license must provide notice to all landowners within one mile of the proposed facility, OAC 35:15-43-6(a)(6).
¶ 3 As a general matter, a regulatory agency is to apply the regulations in effect at the time an entity comes before it.Thorpe v. City of Durham Housing Authority, 393 U.S. 268, 282
(1969). Thus, absent some contrary provision, the Department should apply the Permanent Rules to all facilities seeking licenses after the effective date. In this case, however, the rules provide that certain classes of facilities will be partially exempted from the new standards:
 (a) Licensed Facilities in operation on the effective date of these Rules shall be exempt from any additional set-back requirements or construction requirements, beyond those requirements on date of construction. Further, all future construction must be in accordance with rules in effect on date of construction.
 (b) Licensed Facilities not yet constructed shall be required to be constructed in accordance with rules in effect on date of construction; however, they shall be exempt from any set-back rule as to dwellings not in effect on date of licensure.
 (c) Unlicensed Facilities in operation on the effective date of these Rules shall not be subject to any set-back requirements not in effect on date of past construction.
35 OAC 15-43-23 (emphasis added).
¶ 4 Under the Permanent Rules, then, facilities that are both licensed and in operation on the effective date of the rules are exempt from all new construction requirements. OAC35:15-43-23(a). Facilities that are licensed but not constructed must comply with all construction requirements in effect at the time of construction except for set-back requirements. OAC35:15-43-23(b). Conversely, facilities that are unlicensed but are in operation are exempt from the new set-back requirements only. OAC 35:15-43-23(c).
¶ 5 What is conspicuously absent from this list is any exception for a facility which is neither licensed nor in operation on the effective date of the Permanent Rules. Indeed, given the careful attention directed at crafting the "grandfather clause," the only conclusion can be that facilities that do not fit into any of the "grandfathered" categories are subject to the Permanent Rules. See R.R. Tway, Inc. v. Oklahoma TaxCommission, 910 P.2d 972, 977 (Okla. 1995) (express mention of special treatment of one category impliedly excludes such treatment of others). Thus, unlicensed animal feeding operations under construction on June 26, 1997, are subject to the Permanent Rules, including set-back and construction requirements.
¶ 6 In some cases the application of the Permanent Rules to unlicensed facilities under construction on the Rules' effective date may work some hardship. However, a property owner has no general entitlement to expect that regulations governing the development or use of his property will always remain the same.In re Bankoff, 875 P.2d 1138, 1141 (Okla. 1994); Blue CircleCement v. Board of County Commissioners, 27 F.3d 1499, 1513
(10th Cir. 1994); see also Harris v. Oklahoma Planning andResources Board, 251 P.2d 799, 804 (Okla. 1952). It is true that under certain circumstances a property owner may have a "vested right" in the use of the property which prevents the property from being subject to a change in regulations. Thus, when a landowner has both received a permit for a building and has relied in good faith on that permit in expending substantial sums for construction he may in most cases be allowed to complete and occupy the building without regard to any change in the law.Bankoff, at 1141; Acierno v. Cloutier, 40 F.3d 597, 618 (3d Cir. 1994). This rule does not apply, however, when construction is begun or the property purchased with notice of the coming change in the law. Biggs v. Town of Sandwich, 470 A.2d 928, 931
(N.H. 1984) (construction of septic system during pendency of ordinance amendment did not create vested right); Portland v.Fisherman's Wharf Associates II, 541 A.2d 160, 164 (Maine 1988) (no vested right to develop property when title was taken with notice of proposed zoning change). Nor does it apply where the challenged use of the property constitutes a nuisance. Hadacheckv. Sebastian, 239 U.S. 394, 410 (1915) (no right to continue to operate a brickyard in vicinity of residences).
¶ 7 Of course, whether a landowner has acquired a vested right in any particular instance is a factual question which we cannot answer in an official Opinion. 74 O.S. Supp. 1996, § 18b[74-18b](5).
¶ 8 It is, therefore, the official Opinion of the AttorneyGeneral that:
The Department of Agriculture's Permanent Feed Yard Rules thatwent into effect on June 26, 1997, govern animal feedingfacilities which were neither licensed nor in operation but wereunder construction on that date.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
CANNON MILES TOLBERT ASSISTANT ATTORNEY GENERAL